No. 14.—Dudley Sneed and Isaac P. Cock, plaintiffs in error, *vs.* James Wiggins and Wiley E. Jones, defendants in error.

[1.] In a contract to pay money, in which it is *expressly* stipulated that the instalments shall be paid at *specified times*, and that if any one instalment is not promptly met, the whole sum shall be due and payable, *time* is of the essence of the contract, and, if the party agreeing to pay fails to do so, he is not entitled to relief in equity.

In Equity. Bill and Answer, and motion to dissolve injunction. In Lee Superior Court. May Term, 1847. Before Judge Warren.

The bill charged, that the defendant Jones, had obtained two several judgments at common law against the complainants, founded on joint and several notes, given by the complainants to Wiggins the other defendant in the bill. That complainants were about to appeal from said judgments to a special jury, when said Jones agreed in writing that if complainants would not appeal, he would give time on the judgments on the following terms, to wit; $500 to be paid on said judgments on the 5th day of November, 1845, one-third of balance remaining due on the 1st January, 1847, one-half of remainder on 1st January, 1848, and the remaining balance on the 1st January, 1849, provided no other *fi. fa.* should levy ; and provided further, that if any of the instalments should not be paid at the times specified, then the said Jones should proceed with his *fi. fas.* The $500 instalment was paid at the time stipulated, but the instalment to be paid 1st January, 1847, was not paid until the 11th of February, 1847, and then was not paid to Jones, but to the clerk of the court. The bill charged that Wiggins (whom the bill alleged to be the true owner of the notes, and called upon to discover that fact,) had received the money so paid to the clerk, and had, in a conversation with one of the complainants, recognised said payment as a substantial compliance with the terms of the agreement giving time, and had further promised to take no advantage of the failure to pay at the time specified.

The bill charged that Jones had ordered the *fi. fas.* to proceed, and that they were levied. The bill further charged, that the complainants had a good defence to the notes (for which see opinion of Supreme Court) on which the judgment was founded, which they could have shown had they appealed ; and they

closed with a prayer that the *fi. fas.* might be enjoined, and for relief, &c.

The answers admitted all the facts charged, except, they *denied,* that Wiggins had recognised the payment made on the 11th of February, 1847, as a substantial compliance with the agreement, or had promised not to take advantage of the failure to pay at the proper time. And they further denied all the facts constituting the defence claimed by the complainants, to the notes.

The defendants then moved to dissolve the injunction on the coming in of the answers.

The Court below sustained the motion to dissolve, and the complainants excepted.

Lyon & Hines, for the plaintiffs in error, insisted that if *time* is ever material, or of the essence of a contract, it is so only in those contracts for the sale and purchase of property, and not then if compensation can be made; but never in contracts for the payment of money. *Eaton* vs. *Lyon*, 3 *Ves.* 692; *Harrington* vs. *Wheeler*, 4 *Ves.* 186; *Seton* vs. *Slade*, 7 *Ves.* 274; *Wadman* vs. *Calcraft*, 10 *Ves.* 67; *Sanders* vs. *Pope*, 12 *Ves.* 282; *Hill* vs. *Barclay*, 16 *Ves.* 402; *S. C.* 18 *Ves.* 56; *Reynolds* vs. *Pitts*, 19 *Ves.* 143; *Hack* vs. *Leonard*, 9 *Mod.* 91; *Cage* vs. *Russell*, 2 *Vent.* 332; 9 *Mod.* 22.

That in all agreements or contracts for the payment of money, having a penalty or forfeiture attached in case of non-payment at a given day, as in this case, time is not of the essence of the contract, but is designed merely to secure the due fulfilment of the principal obligation, which is the payment of the money. And if the party obtains his money he gets all he is entitled to. 2 *Story Eq. sec.* 1313, 1316; *Fonb. Eq.* 131, *ch.* 6, *sec.* 4, *note h*; *Skinner* vs. *Dayton*, 2 *John. Ch.* 535; *Peachy* vs. *Duke of Somerset*, 1 *Strange*, 44; *Duncan* vs. *Lyon*, 3 *John. Ch.* 356; *Benedict* vs. *Lynch*, 1 *John. Ch.* 370; 7 *Paige*, 350.

That the forfeiture was waived, Wiggins having received the money from the clerk, and no notice having been given of any intention strictly to enforce the agreement.

That the Court will not dissolve an injunction unless the denial of the equity in the bill is positive, or if the answer is evasive, or if its statements are improbable, or if substantial justice cannot be done without retaining the bill; but will act always according to its sound discretion, to be governed by the nature of the case.

2 *John. Ch.* 105; 1 *Paige Ch.* 100 ; 4 *Id.* 112; 2 *John. Ch.* 204 ; 1 *Hopk. Ch.* 148 ; *Dan. Ch. Prac.* 1341.

HINES HOLT, for the defendants in error.

In this case the defendants in error insist that, the Court below committed no error in ordering the dissolution of the injunction of the plaintiffs in error; and submit,

First. That when the answers deny the facts and circumstances upon which the equity of the bill is based, the injunction will be dissolved.

Second. That courts of equity never extend contracts beyond the limits and terms embraced in them by the parties themselves.

Third. That contracts for indulgence or forbearance, on the pay- ment of ascertained debts, especially judgments, both in courts of law and equity, are to be strictly construed ; and if the same be agreed to be paid by instalments, any failure to pay an instalment at the time stipulated, entitles the holder to proceed to collect the whole, even though certain of the instalments be not due accord- ing to such contract.

Fourth. That the injunction was improvidently granted in this, to wit; the complainants show themselves to have violated the contracts, the benefit of which they wish, rendering no sufficient excuse or apology for such violation; and are therefore not entitled to any relief in the nature of a specific performance. If they are entitled to any other relief, or have sustained damage, they have ample remedy at law.

The defendants in error further insist, in this particular case, that under the 5th section of the law organizing the Supreme Court, they are entitled to have damages awarded them.

Authorities cited. 1 *Kelly Rep.* 9; 2 *Story Eq. Jur.*, title, *Spe- cific Performance of Personal Contracts*, sec. 718, *et seq.*; 4 *John. Ch. Rep.* 559 ; *Hatch* vs. *Cobb.*

*By the Court.*—NISBET, J., delivering the opinion.

This was a motion to dissolve an injunction upon the coming in of the answer, upon two grounds.

1. Because the equity of the bill was fully sworn off.

2. Because the *time* mentioned in the agreement for the pay- ment of the money was of the essence of the contract; and the

Sneed and another *vs.* Wiggins and another.

complainant having, as appeared by the bill, failed to pay at the time, he was not entitled to a specific compliance on the part of the defendant, in a court of equity.

Suits were instituted at law, by Jones, one of the defendants in this bill, against the complainants, upon several promissory notes, given for the purchase of lands and negroes. To these suits a failure of consideration in part, was pleaded, in this, that two of the negroes were unsound. It was further pleaded, that one of the defendants had received with the family of negroes which he bought from the plaintiff, an aged and infirm slave, not embraced in the contract; that he had supported her for several years, and that he was entitled to an offset against the plaintiff's demand for her maintenance. At the trial term, the defendants confessed judgment for the plaintiff, reserving the right of appeal. Before, however, the appeal was entered, it was agreed between the parties, in consideration that the defendants would not appeal, that the plaintiff should give them time upon the judgments. It was accordingly stipulated, that the defendants, in consideration of their forbearing to appeal, and permitting judgment to pass against them, should pay the judgment by instalments, and *if any one of the instalments should not be paid at the time it fell due, the whole amount should be due and collectable,* and the plaintiff might then proceed to levy and collect it. One of the instalments falling due on the first day of January, 1847, was not paid at the time, but was paid on the 11th of February thereafter, to the clerk of the court, and was received by the plaintiff about the 20th of the same month. This bill, alleging these facts and others yet to be stated, was filed to enjoin the plaintiff, who had levied them, from proceeding on the executions issued on the judgments, praying that the offsets for the maintenance of the old and infirm slave might be allowed, and that an abatement be decreed, by reason of the failure of the consideration aforesaid; and that the plaintiff be held to abide his agreement.

We consider that there is no equity in this bill arising out of the transaction anterior to the agreement. If the defendants had a good defence to the notes, it was available at law. They do not charge inability to prove it without resort to the conscience of the plaintiff; and if there was equity in the bill growing out of the failure of consideration and the offset, it is discharged in the answer by a point-blank negative. The rule upon this subject is so well understood that it need not be here repeated. *See* 1 *Kelly,* 9.

[1.]    The only questions in this case are these—was the *time* stipulated for the payment of the instalments, *of the essence of this contract?*  If it was, then the complainants in the bill were bound to abide it, and are not entitled to come into a court of equity to have the defendant enjoined and held to a specific conformity. And did the acceptance of the money, after the time when it fell due, by the defendant, waive the forfeiture of the contract by the complainants?  The complainants state, as an excuse for their not meeting the payment at maturity, that they supposed, from previous communications had with the defendant, that he did not desire the money to be paid at the time agreed upon in the instrument, and, if he did, that he would not take advantage of their failure, and therefore made but*little preparation to pay, but expected and held themelves liable to pay the money when it was demanded.  They state further, that no demand was ever made.  All of which excusatory allegations are unequivocally denied in the answer.  Not only so, but the answer charges that the complainants, or one of them, was notified previously to the instalment's falling due on the first of January 1847, that it would be expected at the day, and that the contract would be forfeited if it was not paid.  This denial leaves the complainants without equity, so far as their *excuse* is concerned for not paying promptly according to their agreement. They come into equity therefore, admitting their own default, and with no excuse for it.  They do not aver readiness, and eagerness, and anxiety to pay.  They charge their failure to pay, neither upon accident, fraud, nor the act of the defendant; but say, that payment on the 11th of February, after the money fell due in January preceding, was a substantial compliance with their contract; and, if it was not, the acceptance of the money was a *waiver* of the forfeiture, and therefore they are still entitled to the benefit of the contract.

This is not a contract for the purchase of property, real or personal; it is a contract for forbearance to collect a judgment.   The consideration moving the plaintiff in the judgment to enter into it, was the declining of the defendants to appeal, by which he got an earlier lien; and the consideration moving the defendants, was *time* and the privilege of paying the debt by instalments.  Having declined to appeal, in consideration therefor the plaintiff covenants with the defendants, that they shall pay the debt in certain specified instalments; and they with him, that if the instalments are

not met at maturity, the whole debt shall be due, and that the plaintiff shall proceed to collect it. The second instalment not having been met at maturity, the plaintiff levied for the whole debt. Now the bill is filed to enjoin him, and for the other purposes mentioned. It is a bill for specific performance, operating by injunction. That equity has jurisdiction for such a purpose in a proper case made, is not questioned. In all cases of this sort, although the court acts merely by injunction, to prevent the breach of the particular covenant, it in effect secures thereby a specific performance. *Eden on Injunctions Ch.* 2 *page* 27; *Ib. ch.* 10, *page* 198; 2 *Bro. Ch. R.* 64; 3 *Bro. Parl. Cas.* 374; 4 *Id.* 395; *Story Eq. Jur. sec.* 721. This analysis of this contract, and this statement of the form in which the aid of the court of chancery is invoked, will be found necessary to a proper understanding of the judgment we are about to pronounce.

The general doctrine is, that in contracts for the purchase of, or in relation to, real estate, *time* is not of the essence of the contract. The same rule we think may be considered, particularly in this country, as applicable to contracts or agreements for the purchase of personal property. It is not necessary to the case before us that we review the numerous cases upon this intricate question. It is not necessary for this reason, that the discussions upon it grow mainly out of contracts for the purchase of property, and this is *not* a contract of that kind; and for the further reason, that this case, if it does fall within the principles ruling contracts in relation to lands, falls also obviously within one of the exceptions to the general rule above announced.

But, that the curious reader may pursue the inquiry with facility into the recesses of the general doctrine, we refer him to the following authorities: 1 *Fonbl. Eq. b.* 1. *ch.* 6, *sec.* 2, *note e*; *Sugden on Vendors, ch.* 8. *sec.* 1, *p.* 359, *sec.* 4 *pp.* 375 to 379, 7*th edit.*; 7 *Vesey, Jr.* 202; 1 *Atk.* 12; 4 *Bro. Ch. R.* 329; *id.* 469; 4 *Vesey, Jr.* 472 *note* ; 5 *Id.* 736; 7 *Id.* 265; 14 *Id.* 426; 18 *Id.* 335; 6 *Madd. R.* 19, 25, 26; 1 *Sim. & Stu.* 590; 2 *Id.* 29; 5 *Cranch R.* 262; 6 *Wheat. R.* 528; *Story Eq. Juris. sect.* 776, *note* ; 4 *Dallas,* 345; 4 *How.* 86; 4 *Johns. Ch. R.* 559; 1 *Johns. Ch. R.* 370; 1 *Young & Collier,* 415; 1 *Russ. R.* 376; *Jeremy Eq. b.* 3, *p.* 2, *ch.* 4, *pp.* 461, 462.

I have stated, that in contracts for the purchase of land, *time* is not of the essence; but to this general rule there are some exceptions. *Time is of the essence of a contract when the parties have expressly*

*so treated it, or when it is necessarily so, from the nature and circumstances of the contract.* The authorities already quoted, or many of them, sustain this exception; but in its support see particularly, 1 *Johns. Ch. R.* 370; 4 *Id.* 560, 561; 1 *Young & Collier,* 415; *Story Eq. sec.* 776; 4 *Bro.* 469; 4 *Vesey, Jr.* 589, *note;* 7 *Id.* 265. In *Lloyd* vs. *Collett,* Lord Loughborough argues as follows: " There is nothing of more importance than that the ordinary contracts between man and man, which are so necessary in their intercourse with each other, should be certain and fixed, and that it should be certainly known when a man is bound and when not. There is a difficulty to comprehend how the essentials of a contract should be different in equity and at law. It is one thing to say the time is so essential that in no case in which the day has been by any means suffered to elapse, the court would relieve against it and decree performance; the conduct of the parties, inevitable accident, &c., might induce the court to relieve. *But it is a different thing to say, the appointment of a day is to have no effect at all, and that it is not in the power of the parties to contract that if the agreement is not executed at a particular time, they shall be at liberty to rescind it.* I want a case to prove, that when nothing has been done by the parties, this court will hold, in a contract of buying and selling, a rule, that the *time* is not an *essential part* of the contract." In the case of *Benedict* vs. *Lynch,* 1 *Johns. Ch. R.* 375, Chancellor Kent sums up a review of the cases with the following opinion: " It may then be laid down as an acknowledged rule in the courts of equity, that when the party who applies for a specific performance, has omitted to execute his part of the contract by *the time appointed for that purpose,* without being able to assign any sufficient justification or excuse for his delay; and when there is nothing in the acts or conduct of the other party that amounts to an acquiescence in that delay, the *court will not compel a specific performance.* The rule appears to be founded in the clearest principles of policy and justice. Its tendency is to uphold good faith and punctuality in dealing. The notion that seems too much to prevail, that a party may be utterly regardless of his stipulated payments, and that a court of chancery will almost at any time relieve him from the penalty of his gross negligence, is very injurious to good morals, to a lively sense of obligation, to the sanctity of contracts and to the character of this court. It would be against all my impressions of the principles of equity, to help those who show no equitable title to relief."

Nothing that I could say would add to the copiousness and strength of this reasoning ; it is entitled to be, upon the case before me, conclusive in its authority, because the case in which it was announced is like this case.    *There*, as *here*, there was a contract to pay money by instalments at particular times, and upon failure to pay, the whole contract was to be void.    *There*, as *here*, there was a failure to pay according to the agreement; and *there*, as *here*, the party in default went into a court of equity for a specific performance, without showing any thing to justify or excuse his default.    In a more masterly way than any where else in the English books, so far as my research has extended, is this subject presented in *Hepnell* vs. *Knight*, 1 *Young & Collier*, 415, by Mr. Baron Alderson.    His opinion is so satisfactory, that I shall make no apology for making from it the following extract : " Now the first question is, was *time of the essence of this contract ?*    After examining with as much attention as I can, the various cases brought before me during the argument, it seems to me to be the result of them all, that a court *of equity is to be governed by this principle : it is to examine* the contract, not merely as a court of law does, as to what the parties have in terms expressed to be the contract, but as to what is in truth the *real intention of the parties, and to carry that intention into effect.*    But in so doing I should think it prudent, in the first place, to look carefully at what the parties have expressed, because in general they must be taken to express what they intend, and the burden ought, in good reason, to be thrown on those who assert the contrary.    In the case of a mortgage, however, which I use for the purpose of illustration rather than as at all parallel to the present case, the court looking to the real contract, which is a pledge of the estate to pay a debt, treats the time mentioned in the mortgage deed, as only a formal part of it, and decrees accordingly, taking it to be clear that the general intention should override the words of the particular stipulation.    So in the ordinary case of the purchase of an estate, and the fixing of a particular day for the completion of the title, the court seems to have considered, that the general object being only the sale of the estate for a given sum, the particular day is merely formal, and the stipulations mean, in truth, that the purchase shall be made in a reasonable time, regard being had to all the circumstances of the case and the nature of the title to be made.    But this is only a corollary from the general position, which is, that the *real contract, and all the stipulations really intended to be complied with literally, shall be carried*

*into effect.* We must take care, however, that we do not mistake the corollary for the original proposition. If therefore the thing sold be of greater or less value, according to the effluxion of time, it is manifest that time is of the essence of the contract, and a stipulation as to time must then be literally complied with in equity as well as at law. The cases of the sale of stocks and of a reversion, are instances of this. So also, if it appear that the object of one party, known to the other, was that the property should be conveyed on or before a given period, as the case of a house for residence, or the like. I do not see therefore why, *if the parties choose even arbitrarily, provided both of them intended so to do, to stipulate for a particular thing to be done at a particular time, such a stipulation is not to be carried literally into effect in a court of equity.* That is the real contract. The parties had a right to make it. Why then should a court of equity interfere to make a new contract, which the parties have not made ?"

It seems then manifest from these authorities, that if the parties *expressly agree that time* shall be important; if they stipulate that a thing shall be done or not done, at a given time, then *time* is of the essence of the contract, and it must be observed. Courts of equity, as well as of law, will hold the parties to their agreement; they will make for them no new contract. Even if the stipulation as to time be arbitrary, if the parties make it, it must be carried into effect; the intention must prevail. In this case, there was an *express stipulation* as to time. The parties *agreed* that the money should be paid at *specified times*, and if not paid promptly, the whole debt should be collected. Such was clearly the *intention* of these parties, and we must, as did the Court below, hold them to a literal fulfilment of it. The complainants in this bill are not therefore entitled to relief in this Court, unless the conduct of the defendant in receiving the money after it was paid, amounted to a waiver of the forfeiture of the contract. Before considering whether it was or not, it is an obvious remark, which we hasten to make, that if the principles laid down by Chancellor Kent and Baron Alderson are true, as applicable to contracts for the purchase of property, *a fortiori* they are true as applicable to contracts like this, which have relation to the payment of money *alone.* In all commercial transactions, *time* is of the utmost importance. Promptness in meeting engagements to pay, is the soul of commerce and the basis of credit. It is indispensable to trade. The same reasons of right and policy, which make time

so important in agreements to pay money on promissory notes and bills of exchange, apply to this agreement.

Another remark is this; it is not necessary, in order that the defendant should resist the plaintiff's application for a specific performance, that he (the defendant) should show that he has been damaged by the complainants' default. Although not damaged, he has a right to insist upon a literal compliance; or rather the law will presume that he has been damaged. 1 *Johns. Ch. Rep.* 379.

In looking at this case, I am ready to exclaim, as Lord Loughborough did in *Lloyd* vs. *Collett,* " An equity arising out of one's own neglect ! *It is a singular head of equity !* "

Still, if the defendant did in fact *waive* the forfeiture of this contract, *that* may entitle the complainants to relief in equity. We have seen that he did not waive the payment of the money at the maturity of the instalment on 1st January, 1847. The bill does not charge that he either authorized or acquiesced in the delay of payment. Nor did he do any act, after the 1st January, 1847, which can be construed into a waiver or remission of the forfeiture. His receiving the money, and giving the complainants credit for it on the judgment, does not, in our opinion, amount to a waiver. *That* belonged to him with or without a forfeiture of the contract. Nothing short of a new contract could restore the complainants to the benefits of the contract which they had lost, and that was not made. There was nothing for the defendant to do, which, if done, or which the complainants had omitted to do, which, if permitted still to do, could restore them. We repeat, that nothing short of an express undertaking, on the part of the defendant, could restore the complainants to the benefits of their broken contract. They show no equity, and are not entitled to the injunction prayed for.

Let the judgment of the Court below be affirmed.