A98A2007. HOLDEN v. SMITH et al.
(511 SE2d 569)

BEASLEY, Presiding Judge.

Larry Holden sued Donald Joe Smith and Annie Mae Jordan in equity for specific performance of an installment land sales contract.[1] The trial court granted defendants' motion for summary judgment. Holden urges that material issues of fact remain for jury resolution.

On July 8, 1996, Holden entered into an agreement, drafted by his attorney, entitled "Installment Land Sales Contract." The agreement was with Smith and Jordan ("the sellers") to purchase their home for a price equal to the outstanding payments due on the sellers' first and second mortgages on the property plus all future payments due under those mortgages until the debts were paid in full. Although the contract provided that payment was to be made to the sellers, Holden made payment directly to the original mortgage holders without objection. Upon signing the agreement, Holden took possession of the property and was required to pay the taxes and assessments. He also cured the substantial defaults by payment. The

---

[1] The Supreme Court transferred the case to this Court stating that "any issues on appeal involving equity are ancillary to the main legal issues on appeal pertaining to whether the plaintiff/appellant breached the underlying contract for the sale of real property. . . ."

sellers were obligated under the contract to execute and deliver a warranty deed for the property only upon Holden's payment of the entire outstanding indebtedness secured by the property.

The agreement also provided: "DEFAULT BY BUYER: Should the Buyer fail to make any payments as provided herein when due the amount paid hereon *may* be retained by the Seller as the consideration for making this agreement and thereupon the Seller shall be released from all obligation in law or equity to convey said property and any occupancy of said property thereafter by Buyer shall be deemed to be a tenancy at the pleasure of the Seller and Buyer shall never acquire and expressly waives any and all rights or claims of title because of such possession." (Emphasis supplied.)

The contract further provided: "EFFECT OF WAIVER. The waiver by the Seller of any covenant, condition or agreement herein contained shall not vitiate the same or any other covenant, condition or agreement contained herein and the terms, conditions, covenants and agreement set forth herein shall apply to and bind the heirs, successors, and assigns of each of the parties hereto. *Time is of the essence of this agreement.*" (Emphasis in original.)

Having made payments totaling thousands of dollars in the course of a year, Holden inadvertently missed the June 1997 payment to the first mortgage holder. On June 27 that holder notified the sellers, but the sellers never informed Holden that the payment was overdue or that they considered the lack of payment to constitute a forfeiture of the purchase. Holden made the July payments. Then on July 16 Holden notified the sellers in writing that he had scheduled a closing for July 30 and had prepared a warranty deed for the sellers to sign. He verbally informed them that the purpose of the closing was to pay off the two loans. The sellers only responded that they would not sign anything. In an affidavit Holden stated that at the time of the closing, "I was ready, willing and able to pay off both the first and second priority notes and Deeds To Secure Debt and was prepared to tendered [sic] all such indebtednesses." The sellers did not appear for the closing, and Holden has not made any payments since.

On August 4, Holden filed suit to compel the sellers to convey title to him. Holden concedes he overlooked the June payment but argues that the sellers, by their conduct, waived the default by (1) not timely "exercising the [default] option" and (2) "by continuing to accept payments from [Holden] after the default." He also contends the sellers' failure to timely exercise the default option was a waiver of the "time is of the essence provision," and that once the sellers refused to deliver title, he was not required to continue making payments on the mortgages in order to obtain specific performance of the contract. He asserts he made an unconditional tender of the balance

of the purchase money before institution of the suit. The sellers respond that the clear terms of the agreement provide a remedy of forfeiture in the event of a missed payment, that the contract included a "no waiver clause," that the contract did not require the sellers to notify Holden of a default, and that any payments after June were just rental payments.

We must decide whether judgment was premature.[2] "A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the non-movant."[3]

Resolution of the appeal focuses on the meaning of the word "may" as used in the default clause which provided that upon default the sellers "may" choose to recharacterize the past payments as consideration for the agreement, and that *thereupon the seller shall be released from all obligations. . . .*" (Emphasis supplied.) When construing the Georgia Code, "may" ordinarily denotes permission and not command.[4] In other settings such as this contract, "[t]o determine what meaning the word 'may' imparts, it must always be considered in connection with its context and subject matter. [Cits.]"[5] "The contract must be examined 'as a whole' in attempting to construe any portion thereof. 'Where the terms and conditions of a policy are unambiguous, the court must declare the contract as made by the parties. . . . Where the meaning is plain and obvious, it should be treated as literally provided therein.' "[6]

The remedy provision of the contract refers to "the exercise of the right of forfeiture," implying the vendor may choose not to exercise the right. It also provides that the sellers may pursue remedies other than forfeiture "contemporaneously or otherwise," implying the seller may choose another remedy in lieu of forfeiture. The contract as a whole makes clear that the word "may" in the default provision denotes permission. The person or persons who "may" declare forfeiture have the right to choose. Because the sellers could elect one or more of several possible remedies including forfeiture once a default occurred, it became necessary for them to declare their intention. Forfeiture was not an automatic result of default. At a minimum the sellers were required to indicate whether they were exercising the contractual right to forfeiture. The law abhors forfeiture.[7]

---

[2] OCGA § 9-11-56 (c).

[3] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[4] OCGA § 1-3-3 (10).

[5] *Olympic Constr. v. Drywall Interiors*, 180 Ga. App. 142, 143 (1) (348 SE2d 688) (1986).

[6] (Citations omitted.) *Lamb Bros. Lumber Co. v. South Carolina Ins. Co.*, 186 Ga. App. 51, 53 (366 SE2d 388) (1988).

[7] *Smith v. Wilson*, 173 Ga. 103 (159 SE 583) (1931) (equity abhors forfeitures).

The sellers contend their refusal to attend the closing shows their election to seek forfeiture under the contract. But their silence is not conclusive because their actions are not inconsistent with pursuit of other remedies. Indeed, the sellers accepted payments in July despite the omitted June payment, suggesting they may have chosen to waive noncompliance. As for the provision that time is of the essence, the evidence suggests the sellers may have waived strict compliance with the provision with regard to the June payments.[8]

The sellers also contend that because the contract does not require them to give notice of default, their rights are not impaired by not announcing intent to seek forfeiture. Notice of default and notice of forfeiture under the contract are two distinctly different acts of communicated intent. Once Holden defaulted, the sellers were not free to declare rescission secretly and continue receiving payments. The provision that time is of the essence applies to the sellers as well.[9]

There is no evidence in the record that the sellers elected or pursued any remedy as of July 16, 1997, when they were invited to a closing. Based solely on the record, as of the date suit was filed an issue remained as to whether the sellers had exercised any right to a remedy available to them arising out of Holden's default. They offered no evidence that they did.

Holden attempted to pay off the two mortgages pursuant to the contract which authorized him to make prepayments including payment in full. Therefore at the time of his demand to close Holden believed he was fully authorized to close the transaction, and he had received no indication to the contrary from the sellers. Holden stated he was willing to pay all necessary amounts at the closing, and thus he complied with the prepayment provision.

Holden did not make the August payments before filing suit on August 4, three days after the August payments were due. "Generally a plaintiff seeking specific performance must show performance, or ability, readiness, and willingness to perform all the provisions of the contract to be performed by him; and relief will be denied a plaintiff who is unable to perform his part of [the] contract."[10] "But it is a well-established rule that tender before suit is filed may be and is waived where the party entitled to payment, by conduct or declaration, proclaims that, if a tender should be made, acceptance would be

---

[8] *Edwards v. McTyre*, 246 Ga. 302, 303 (3) (271 SE2d 205) (1980) ("Even though the contract stated that time was of the essence, this provision can be waived and conduct either before or after the [deadline] date may show waiver.").

[9] See, e.g., *Chapman v. Ayer*, 95 Ga. 581 (1) (23 SE 131) (1895).

[10] *Smith v. David*, 168 Ga. 511, 513, hn. 3 (148 SE 265) (1929).

refused."[11] At a minimum, there is an issue of fact as to the meaning of the sellers' refusal to attend the scheduled closing and accordingly whether Holden was required to make the August payments before filing suit. *Jordan v. Flynt*[12] involves default after filing suit and is not on point.

*Judgment reversed. Pope, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 3, 1999.

*Charles L. Day*, for appellant.
*Daniel B. Simon III*, for appellees.

---

[11] *Finney v. Blalock*, 206 Ga. 655, 660 (3) (58 SE2d 429) (1950).
[12] 240 Ga. 359, 364 (3) (a) (240 SE2d 858) (1977).