A07A0407, A07A0408. PIEDMONT CENTER 15, LLC v. AQUENT, INC.; and vice versa.
(649 SE2d 733)

MIKELL, Judge.

Piedmont Center 15, LLC ("Piedmont Center"), brought a dispossessory action against Aquent, Inc. ("Aquent"), seeking to recover possession of leased space and past due rent. Aquent answered, claiming its predecessor-in-interest, Renaissance Worldwide, Inc. ("Renaissance"), exercised a partial cancellation option in the commercial lease agreement, so that Aquent was not liable for the claimed arrearage. The parties filed cross-motions for summary

judgment. The trial court denied Piedmont Center's motion, but partially granted Aquent's motion, finding that whether Aquent substantially complied with the termination provision was a question of fact for the jury. In Case No. A07A0407, Piedmont Center appeals the denial of its motion for summary judgment and the partial grant of Aquent's motion for summary judgment, and in Case No. A07A0408, Aquent cross-appeals the denial of its motion for summary judgment. For reasons that follow, we reverse in Case No. A07A0407, and dismiss as moot Aquent's appeal in Case No. A07A0408.

> We conduct a de novo review of both the law and the evidence on appeal from the grant or denial of a motion for summary judgment. We view the evidence in a light most favorable to the nonmovant in order to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law.[1]

The undisputed facts show that Renaissance, a wholly owned subsidiary of Aquent, entered into a commercial lease (the "Lease") with Piedmont Center on March 8, 1999, for Suites 1200 and 1400 in Building 15, Piedmont Center, located at 3575 Piedmont Road, Atlanta (the "Premises"). The original term of the Lease ran for seven years from on or about May 22, 1999, through May 31, 2006. Pursuant to special stipulations attached to the Lease, Renaissance had a cancellation option that allowed it to cancel that portion of the Lease related to the 14th floor at the end of the fifth year of the Lease, or May 31, 2004, "subject to compliance with" certain terms and conditions. One of these conditions was that Renaissance give notice of its intent to cancel 12 months before the cancellation date, i.e., May 31, 2003. A second condition was that Renaissance make a lease cancellation payment "on or before 90 days prior" to the end of the fifth year of the Lease, i.e., March 2, 2004. Paragraph 32 of the Lease further provides that "[t]ime is of the essence of this Lease."

On or about April 1, 2002, Renaissance subleased the portion of the Premises on the 12th floor to a company known as GovConnect, Inc., a Delaware corporation. On May 30, 2003, Renaissance timely notified Piedmont Center of its intent to exercise the cancellation option. On March 30, 2004, 28 days after the deadline established by the Lease, Piedmont Center received a letter from Renaissance purporting to enclose a "termination fee," along with a check dated March 4, 2004, in the amount of $277,472, drawn on Aquent's

---

[1] (Punctuation and footnotes omitted.) *Mariner Healthcare v. Foster*, 280 Ga. App. 406, 407 (634 SE2d 162) (2006).

account. James McKeown, Vice President of Aquent and Renaissance, averred that "[i]t was through inadvertence that this check was not sent on or before March 2, 2004, a fact which is evident from the date of the check. Renaissance real estate tickler file contained the incorrect date for the termination fee." Piedmont Center returned Aquent's check to Renaissance on the day it was received and advised Renaissance that because the termination fee had been tendered after the date allowed by the Lease, the Lease would remain in full force and effect until it expired on May 31, 2006. Piedmont Center did not give Aquent any notice or opportunity to cure the late payment.

In June 2004, Renaissance stopped paying rent for the portion of the Premises on the 14th floor. Aquent continued to collect rent from GovConnect under the sublease of the 12th floor (approximately $18,000 per month) and to pass this rent through to Piedmont Center.[2] The monthly rent shortage for the 14th floor was $47,347.65 per month for June and July 2004, and $49,507.93 per month beginning August 2004 through May 31, 2006. In addition, Renaissance failed to pay a small monthly electricity charge. The total arrearage for rent and utilities through June 3, 2005, was $652,461.38.

On September 30, 2004, Piedmont Center gave notice to Aquent that it was in default and that pursuant to OCGA § 13-1-11, Piedmont Center intended to enforce the provisions of the Lease concerning the payment of attorney fees if the sums due under the Lease were not paid within ten days of Aquent's receipt of the letter. Piedmont Center sent a second letter to Aquent on October 6, 2004, which set forth the calculation of the amounts past due. On October 20, 2004, Piedmont Center sent Aquent a demand for possession of the Premises. On November 23, 2004, Piedmont Center filed this action, alleging that since the cancellation option was not exercised, Renaissance remained liable for the payment of rent for the entire term of the Lease.

*Case No. A07A0407*

On appeal, Piedmont Center contends that the trial court erred in denying its motion for summary judgment and partially granting Aquent's motion because Renaissance failed, as a matter of law, to effectively exercise the cancellation option. Piedmont Center contends that Aquent was required to comply strictly with the Lease provisions and that the cancellation option was not legally exercised

---

[2] In a consent order dated May 19, 2005, Aquent and Piedmont Center had agreed that Aquent could pay and Piedmont Center could accept the payment for the 12th floor without prejudicing Piedmont Center's right to pursue this action.

because the cancellation fee was tendered 28 days late. Aquent contends the late tender was sufficient under the doctrine of substantial compliance.

A lease, like any other contract, is to be construed to give full effect to the intentions of the parties.[3] The general rule in determining contract compliance is substantial compliance, not strict compliance.[4] And, although timely performance may not be of the essence of a contract, it may become so by express stipulation or reasonable construction.[5] As our Supreme Court noted in *Sneed v. Wiggins*,[6]

> if the parties *expressly agree that time* shall be important; if they stipulate that a thing shall be done or not done, at a given time, then *time* is of the essence of the contract, and it must be observed. Courts of Equity, as well as of law, will hold the parties to their agreement; they will make for them no new contract. Even if the stipulation as to time be arbitrary, if the parties make it, it must be carried into effect; the intention must prevail.[7]

The rule with respect to option contracts or option provisions is the opposite of the general rule laid down in OCGA § 13-4-20. In such agreements, a "time is of the essence" provision is *inferred*, thus requiring strict compliance.[8] Accordingly, a lessee seeking to exercise an option to cancel or renew a commercial lease must strictly comply with the terms of that option.[9]

In this case, the parties dispute whether the cancellation provision was an option. Regardless of its characterization, the parties

---

[3] See *Sewell v. Royal*, 147 Ga. App. 88, 90 (1) (248 SE2d 165) (1978).

[4] OCGA § 13-4-20.

[5] OCGA § 13-2-2 (9).

[6] 3 Ga. 94 (1847).

[7] (Emphasis in original.) Id. at 102.

[8] See *Gulf Oil Corp. v. Willcoxon*, 211 Ga. 462, 467 (3) (86 SE2d 507) (1955) ("an option is peculiarly an agreement of which time is of the essence"), citing *Larned v. Wentworth*, 114 Ga. 208, 222 (39 SE 855) (1901) (citations omitted); see also *Atkinson v. Cook*, 271 Ga. 57, 58 (518 SE2d 413) (1999) ("exercise of a contractual option by an offeree 'must be unequivocal and in accordance with the terms of the option'") (footnote omitted); *Solon Automated Svcs. v. Corp. of Mercer Univ.*, 221 Ga. App. 856, 857-858 (1) (473 SE2d 544) (1996) (in option contracts, time of the essence provision is inferred and requires only that the optionee perform timely). But see *Goldman v. Vinson*, 244 Ga. App. 815, 818 (2) (535 SE2d 305) (2000) (strict compliance with the requirements for exercise of an option may be waived). See generally Larkins, Ga. Contracts, § 3-5 (2002).

[9] Compare *Rome Healthcare, LLC v. Peach Healthcare System*, 264 Ga. App. 265, 272 (5) (590 SE2d 235) (2003) (substantial compliance, not strict compliance, applies to termination clause of management agreement). But see *Hemmerich v. Southeast Properties Group*, 230 Ga. App. 697, 699 (2) (498 SE2d 87) (1998) (tenant failed to substantially comply with lease extension option).

agreed that time was of the essence and that Renaissance could exercise its right to cancel the Lease if it satisfied two conditions: (1) give notice of its intent to cancel 12 months before the cancellation date; and (2) pay a cancellation fee "on or before 90 days prior" to the end of the fifth year of the Lease. The Lease further provided that

> [n]o failure of Landlord to exercise any power given Landlord hereunder, or to insist upon strict compliance by Tenant of any obligation hereunder, and no custom or practice of the parties at variance with the terms hereof, shall constitute a waiver of Landlord's right to demand exact compliance with the terms hereof.

The parties here are sophisticated business people represented by counsel in negotiating the terms of the Lease. Since the parties agreed that time was of the essence, payment of the cancellation fee by March 2, 2004, was essential to full compliance with the terms of the cancellation provision. Renaissance only partially complied with the cancellation provision. Although Renaissance tendered a timely written notice of termination, it tendered the cancellation fee on March 30, 2004, 28 days late. Accordingly, it failed to exercise its right to cancel the Lease and the trial court erred in ruling otherwise.

Alternatively, Aquent contends that because the termination fee constitutes "Rent" under the Lease, Renaissance's failure to make a timely tender was an event that required Piedmont Center to give a notice of default under Paragraph 8 of the Lease and give Renaissance an opportunity to cure the default. By failing to comply with Paragraph 8, Piedmont Center improperly imposed a forfeiture of the cancellation option. Though we agree with Aquent that courts do not favor forfeitures,[10] "[t]he exercise of a right under a contract does not constitute a 'forfeiture.' "[11] The cancellation option existed for Aquent's benefit and placed the burden on Aquent to comply with its terms, with the effect of noncompliance being expiration of the option. There is no requirement in the cancellation provision that Piedmont Center notify the tenant of noncompliance with the option terms, including payment of the termination fee.

For these reasons, the trial court erred in granting partial summary judgment to Aquent and in denying Piedmont Center's motion for summary judgment. On remand, the trial court is directed

---

[10] See *Holden v. Smith*, 236 Ga. App. 205, 207 (511 SE2d 569) (1999) ("[t]he law abhors forfeiture") (footnote omitted).

[11] *Interstate North Assoc. v. Hensley-Schmidt, Inc.*, 138 Ga. App. 487, 490 (3) (226 SE2d 315) (1976).

to enter summary judgment in favor of Piedmont Center for the rent due under the Lease for the 14th floor from June 1, 2004, through May 2006.

### Case No. A07A0408

Our decision in Case No. A07A0407 renders moot Aquent's claim in its cross-appeal that the trial court erred in denying its motion for summary judgment.

*Judgment reversed in Case No. A07A0407. Appeal dismissed as moot in Case No. A07A0408. Johnson, P. J., and Phipps, J., concur.*

DECIDED MAY 15, 2007 —
RECONSIDERATION DENIED JULY 19, 2007 —

*Kitchens, Kelley & Gaynes, Mark A. Kelley*, for appellant.
*Caldwell & Watson, Harry W. MacDougald*, for appellee.