## A11A1701. STONEMILL CHURCH, INC. v. RBC BANK (USA) INC.

(726 SE2d 632)

DOYLE, Presiding Judge.

Stonemill Church, Inc., filed suit seeking, inter alia, to enjoin the foreclosure by RBC Bank (USA) Inc.[1] on property held pursuant to a security deed as collateral to a loan by the Bank to Stonemill. The Bank successfully moved for summary judgment, and Stonemill now appeals, contending that issues of material fact remain as to whether Stonemill was in default, whether the Bank waived events of default, and whether the Bank wrongfully prevented tender of payment to release the subject property.[2] For the reasons that follow, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[3]

So viewed, the record shows that on April 17, 2006, Stonemill executed a $10,000,000 promissory note in favor of the Bank to finance the construction of a church building. The note required monthly payments of interest only, with a maturity date of April 17, 2008, when the outstanding principal and interest would become due. In connection with the note, Stonemill executed a security deed for the property.

After construction began, Stonemill merged with Hamilton Mill Baptist Church and agreed to purchase that church's property ("Hamilton Mill Property"). To finance the purchase, Stonemill requested a draw from the Bank on its construction loan to pay the remaining $192,124.41 mortgage on the Hamilton Mill Property, and the Bank agreed in exchange for a security interest in the Hamilton Mill

---

[1] References to the Bank and Stonemill herein include predecessors party to the loan agreements.

[2] A related appeal was dismissed by this Court in *Flanigan v. RBC Bank (USA) (Inc.),* 309 Ga. App. 499 (711 SE2d 63) (2011).

[3] *Matjoulis v. Integon Gen. Ins. Corp.,* 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

Property. Accordingly, the original loan documents were amended on December 20, 2006, to reflect the draw and add the Hamilton Mill Property to the collateral securing the note. The amendment also provided as follows: "So long as Borrower is not in default hereunder, or pursuant to the Note, Security Instrument or Loan Documents, and upon the payment or repayment of principal on the Note in the amount of $192,124.41, Lender shall release from the lien of the Security Instrument the Hamilton Mill Property."

As the April 18, 2008 maturity date approached, Stonemill failed to fully pay the principal or interest on the note. The parties agreed to extend the maturity date to July 17, 2008, and again to August 31, 2008. The latter extension was memorialized in an August 29, 2008 letter from the Bank to Stonemill stating as follows:

> The loan ("Loan") . . . matured on July 17, 2008 ("Maturity Date"). On the Maturity Date, a final payment of the entire balance of principal, interest, fees, premiums, charges and costs and expenses then outstanding on the Loan was due and payable in full. The Borrower has requested that RBC Bank extend the Maturity Date for a period of 45 days, until August 31, 2008 ("Extended Maturity Date"). By this letter, RBC Bank is extending the Maturity Date of the Loan to the Extended Maturity Date.
>
> Between the Maturity Date and the Extended Maturity Date, Borrower will continue to pay to RBC Bank monthly payments of principal and interest. The amount of the monthly payments will be the same as, or determined under the same terms and conditions as, the monthly payments required to be made by Borrower on the Loan prior to the Maturity Date.
>
> On the Extended Maturity Date, a final payment of the entire balance of principal, interest, fees, premiums, charges and costs and expenses then outstanding on the Loan will be due and payable in full by Borrower to RBC Bank, as provided in the . . . promissory note.
>
> Except for the extension of the Maturity Date and continuation of payments under the Loan as provided in the preceding paragraph of this letter, (i) the terms and conditions of the Loan remain unchanged and in full force and effect . . . .
>
> By granting Borrower the extension set forth in this letter, RBC Bank does not waive and is not waiving any of its

rights and remedies under the Loan Documents or otherwise . . . . Borrower and all other persons directly or indirectly liable to RBC Bank under any one or more of Loan Documents shall continue to remain liable to RBC Bank to the same extent as now set forth in the Loan Documents, as modified by the extension granted in this letter . . . .

In August 2008, Stonemill entered into a contract to sell the Hamilton Mill Property for $2.8 million. The intended closing date was in September 2008, but it was postponed when the parties realized that the Bank still held a security interest in the Property.

As of September 1, 2008, the note had matured and Stonemill had not paid the outstanding principal and interest. On September 4, 2008, Brian Crabtree, Stonemill's Minister of Finance and Operations, spoke to Helen Cease, an agent of the Bank, and discussed the prospect of selling the Hamilton Mill Property. At that time, Cease explained that the Property was "cross-collateralized" with the construction loan, and she was unsure of the Bank's position with respect to releasing the Property for the $192,124.41 pay-off amount.

On September 26, 2008, with the principal and interest not fully paid, the Bank agreed to again extend the maturity date to October 31, 2008. Also on that date, Stonemill made a partial interest payment through September 16, 2008. On October 8, 2008, in anticipation of selling the Hamilton Mill Property, Crabtree again spoke with Cease, who explained that the Bank could not release the Property for the $192,124.41 release amount. Stonemill made no other payments until November 25, 2008, when it paid $7,000, despite the entire loan's maturation at that time.

In November 2008, Stonemill and the Bank had further conversations about Stonemill's desire to sell the Property and the Bank's refusal to accept the $192,124.41 payoff amount. When Stonemill was unable to provide clear title, a prospective buyer terminated a contract he had entered into to purchase the Property. After November 2008, the Bank stopped sending payment coupons to Stonemill, and the next payment was made in February 2009 for $143,500, followed by successive payments of $26,000 in March, April, and May 2009.

In February 2009, Stonemill and its buyer entered into a contract to consummate the sale of the Hamilton Mill Property, which depended on the release of the Property by the Bank. The sale was closed in escrow pending resolution of Stonemill's dispute with the Bank.

On March 4, 2009, the Bank, via its attorney, sent Stonemill a letter stating that the loan was in default due to the maturation on October 31, 2008. Two more letters were sent in April 2009 notifying

Stonemill of the default status and demanding payoff; in May 2009, the Bank initiated foreclosure proceedings.

In May 2009, Stonemill initiated the present action seeking to enjoin the foreclosure and recover damages arising from the loss of the sale of the Property to the prospective buyer. The Bank voluntarily dismissed its foreclosure proceeding and moved to dismiss the complaint, and Stonemill opposed the motion. In light of the parties' reliance on matters outside the pleadings, the trial court treated the motion as one for summary judgment, and it granted the motion in favor of the Bank. The court's order was predicated on the fact that, under the terms of the note, the Bank's obligation to release the Hamilton Mill Property existed only "[s]o long as Borrower is not in default." This appeal followed.

Stonemill argues that the trial court erred by granting summary judgment because the record contains issues of fact as to whether it was in default, or whether the Bank waived default, at the time Stonemill requested release of the Property. As stated in its brief, Stonemill essentially argues that the loan documents "do not relieve [the Bank] of the requirement to give notice of default." We disagree.

With respect to notice of default, the note contained the following language:

> Should any installment of principal or interest or any other sums as required by this Note or said Security Deed not be paid in full when due, and should such failure continue for a period of five (5) calendar days from the due date thereof, or should there occur a "Default" or an "Event of Default" under and as defined in the Security Deed, or the other Loan Documents (any such event being hereinafter referred to as an "Event of Default" for purposes of this Note), then and in any such event the entire unpaid principal sum evidenced by this Note, together with all interest accrued thereon, *shall, at the option of the holder* and without notice or demand to the undersigned, become due and may be collected forthwith, time being of the essence of this Note.

Thus, by the terms of the note, an event of default not remedied within five calendar days would render due the entire debt on the note.

Stonemill argues that the emphasized language above created an obligation on the part of the Bank to notify Stonemill that the debt was accelerated before it could be deemed in default. This, however, ignores the plain language of the agreement that a default shall result in acceleration at the option of the holder "without notice or

demand to the" borrower. Thus, whether or not Stonemill received any notice from the bank, a missed payment not remedied within five calendar days resulted in default.[4] Furthermore, even if the Bank was required to make an affirmative election to accelerate the loan, the Bank's failure to do so does not change the fact that Stonemill failed to pay an obligation and was therefore in default for purposes of the release provision.[5]

As stated by the trial court, it is undisputed that Stonemill failed to fully pay the note by the August 31, 2008 extended maturity date. Thus, at least until the maturity date was extended on September 26, 2008, Stonemill was in default, and by the terms of the note, the Bank had no obligation to honor the $192,124.41 release provision. Further, even assuming that the maturity date extension cured the default due to maturation of the note, Stonemill did not make its September monthly interest payment, always due on the 17th of each month, until September 26. This was outside of the note's five-day grace period and resulted in default status despite the extended maturity date.[6] Thus, in October 2008, being in default, Stonemill could not satisfy the preconditions necessary to take advantage of the release provision of the amended loan documents.[7]

After the note matured on October 31, 2008, Stonemill still had not satisfied the terms of the note and was in default in November 2008, at least until an extension of the maturity date to December 15, 2008, allegedly made on November 19, 2008.[8] But Stonemill's own

---

[4] See *Duncan v. Lagunas*, 253 Ga. 61, 63-64 (2) (316 SE2d 747) (1984) ("[W]here the parties agree that in the event of default the creditor 'may declare' acceleration 'without notice' to the debtor, . . . notice of the declaration of acceleration need not be communicated to the debtor.") (punctuation omitted).

[5] Cf. *Martin v. Hamilton State Bank*, 314 Ga. App. 334 (723 SE2d 726) (2012) (bank's pursuit of a specific remedy did not waive its right to pursue other remedies because of nonwaiver provision).

[6] The extension agreement explicitly stated that all terms and conditions of the loan remained in full effect, and the Bank did not waive any of its rights or remedies under the loan documents.

[7] See generally *Cochran v. Teasley*, 239 Ga. 289, 291-292 (4) (236 SE2d 635) (1977) ("A borrower is not entitled to specific performance of a release provision in a deed to secure debt unless he first pays or tenders to the lender the amount admittedly due."). *Holden v. Smith*, 236 Ga. App. 205 (511 SE2d 569) (1999), relied upon by Stonemill, is inapposite. That case addressed a seller's obligation under an installment contract to release property to a defaulting buyer upon payoff. The opinion addressed the *seller's* (i.e., lender's) ability to retain payments without conveying the property to the buyer. Here, the issue is the *borrower's* ability to exercise the release provision, not the *Bank's* ability to exercise an option under the loan documents. Under the terms of the loan documents in this case, the Bank had no obligation to perform absent *Stonemill's* satisfaction of the conditions precedent.

[8] The record contains an unsigned letter from RBC extending the maturity date to December 15, 2008, but pretermitting any evidentiary or contractual issues, we treat the letter as binding for purposes of our analysis.

accounting shows that it did not make any payments in October 2008, and its only payment in November was for $7,000, which was deficient. Thus, even if the maturity date was extended, Stonemill defaulted by failing to make required interest payments.

The record shows that Stonemill failed to make any monthly payments from the insufficient November 2008 payment until it made a $143,500 payment on February 9, 2009. Nevertheless, the note was already mature and this payment — even if it covered interest and penalties normally due — did not satisfy the note. Further, although Stonemill made monthly payments of $26,000 in March, April, and May 2009, those payments did not cure the default on the matured note. Thus, Stonemill's default status continued.

In summary, at all relevant times, Stonemill was in default on its obligations under the loan documents. As a result of Stonemill's default status, the Bank's obligation to release the Hamilton Mill Property for $192,124.41 did not arise. For purposes of the release, the loan documents did not require the Bank to make any election or provide any notice to Stonemill regarding its default status. Therefore, the Bank did not wrongfully refuse to release the Property for that amount, and the trial court did not err in granting the Bank's summary judgment motion.

*Judgment affirmed. Ellington, C. J., and Miller, J., concur.*

DECIDED MARCH 26, 2012.

*James B. McClung*, for appellant.
*Stites & Harbison, J. D. Humphries III*, for appellee.