### 23234. STOREY v. AUSTIN.

ARGUED DECEMBER 14, 1965—DECIDED JANUARY 6, 1966—
REHEARING DENIED JANUARY 18, 1966.

*Jones, Bird & Howell, F. M. Bird, Eugene T. Branch, Trammell Vickery,* for appellant.

*Noah J. Stone, Stone & Stone, Thomas O. Davis, Davis & Stringer,* for appellee.

GRICE, Justice. We evaluate a petition seeking specific performance of an option to renew a lease, and for ancillary relief.

Frederick G. Storey filed such a petition against D. E. Austin, Jr., in the Superior Court of DeKalb County, making allegations which, insofar as material here, are substantially those that follow.

In 1955 Austin leased to Storey certain described property for a ten-year term beginning July 1, 1955, and ending June 30, 1965, the instrument giving the lessee the option to renew the lease for two like periods. The lessee entered into possession and erected a drive-in theatre. He installed theatre and concession equipment at a cost of approximately $225,000 and has maintained such improvements up to the filing of this suit.

Pursuant to the lease agreement, the lessee exercised the option to renew for ten years beginning July 1, 1965, and ending June 30, 1975. But the lessor refuses to renew.

Prior to June 1, 1965, the lessee's agent notified William C. Forkner of Forkner Realty Company that the lessee desired to renew the lease for an additional ten years, as permitted by the instrument. Forkner Realty Company is named as agent for the lessor in the lease agreement, and William F. Forkner for many years prior to June 1, 1965, discharged that company's agency responsibilities under the lease agreement.

Upon being informed of the lessee's desire to renew, as permitted by the lease agreement, Forkner informed the lessee's agent that he would prepare the renewal lease and forward it for execution.

Prior to June 1, 1965, Forkner, by telephone, informed the lessor of the lessee's notice of election to renew the lease, and asked the lessor if he wished to renew for a term beyond the original option period. The lessor stated that he did not. Forkner then told him that he would prepare the renewal lease and forward it for execution. Pursuant to the lessee's notice of election and his own conversation with the lessor, Forkner prepared a renewal lease for an additional ten-year term. Prior to June 30, 1965, the lessee executed such renewal lease and on June 28, 1965, Forkner forwarded it to the lessor. By letter dated June 29, 1965, the lessor notified the lessee that he would not execute the lease since he did not receive written notice of the lessee's election to renew, as the lease required, and that he would consider him a tenant at will for the same rental figure he had been paying.

Thereafter, the lessee forwarded to Forkner the July rental of $450, as required by the renewal and the original leases. After deducting its commission, Forkner's firm forwarded the balance of that payment to the lessor. But by letter of July 8, 1965, the lessor returned the check to that firm, and stated that it was no longer his agent. By letter dated July 13, 1965, the lessee forwarded to the lessor a check in the amount of $450 for July rent and insisted that the lease had been renewed. That check has been retained by the lessor. Prior to August 1, 1965, the lessee transmitted to the lessor a check for the August rent, but the lessor returned it.

At the end of the term of the original lease, it had not been

canceled, and the lessee was not in default in the performance of any covenant.

Also, the lessee has performed and complied with all the terms, covenants and obligations of the renewal lease, and is ready, willing and able to pay the rent required therein and to comply with all of its covenants, conditions and obligations. While it appears useless to tender further rent, the lessee hereby offers, during the pendency of this action, to pay into court any rental or other sums required.

The foregoing, it is alleged, shows clearly that the lessee exercised the option to renew the lease; that the lessor, prior to June 1, 1965, was aware of such exercise of the option; and that written notice thereof, if required by the original lease, was waived by the lessor.

Dispossessory proceedings have been instituted by the lessor against the lessee to recover the leased premises, and the lessee has filed counter affidavit and bond therein.

The drive-in theatre involved here, in its almost ten years of operation, has established good will and going-concern value at its present location, in addition to the value created by the improvements referred to above. If written notice of exercise of the option to renew was required by the lease agreement the deviation therefrom was slight, the notice was timely, and the lessor was not damaged because of the form of such notice. His effort to enforce a forfeiture of the covenant to renew under such facts and circumstances would result in unconscionable hardship and oppression to the lessee from which equity may grant relief.

In addition to process, rule nisi and general relief, the lessee's petition prayed that the renewal of the lease for the additional term of ten years, beginning July 1, 1965, and ending June 30, 1975, be specifically enforced and that until a hearing in this case the dispossessory proceedings be enjoined.

Attached to the petition is a copy of the original lease agreement. Paragraph 14 provides, insofar as material here, substantially as follows: if at the end of the original term of the lease (June 30, 1965), it has not been canceled and the lessee is not in default in the performance of any of its covenants or agreements, he shall have the option to renew for an additional

term of ten years beginning July 1, 1965, and ending June 30, 1975, at the same rental as provided for in the original lease; and such option may be exercised by the lessee giving to the lessor notice in writing not later than June 1, 1965, of the lessee's intention to exercise the option.

The trial court sustained the lessor's general demurrer to the foregoing petition, and the lessee enumerated that ruling as error.

1. Of considerable prominence in this controversy is an issue over the proper interpretation of the provision ". . . The aforesaid option to renew *may* be exercised by Lessee by giving to Lessor notice in writing not later than June 1, 1965 of Lessee's intention to exercise said option." (Emphasis ours.) The lessor contends that this language requires written notice and that only such will suffice. The lessee maintains that it is permissive, not mandatory, and may be otherwise complied with, as was done here. But, under our view of the situation, it is not necessary to decide this issue. Another matter controls.

Even if the notice was required to be in writing, this requirement was waived by the lessor.

Before the time for exercise of the option had run out, the following events took place: the lessee's agent advised Forkner as to the lessee's election to exercise the option "as permitted in Paragraph 14 of the lease agreement," a portion of which is quoted above; Forkner told such agent that he would prepare the renewal lease and forward it for execution; Forkner then telephoned the lessor of the lessee's notice of election to renew and asked the lessor if he wished to renew for a term beyond the ten-year period; the lessor stated to Forkner that he did not; Forkner then advised the lessor that he would prepare the renewal lease and forward the same for execution.

Thereafter, the lessee executed the renewal lease which had been prepared by Forkner "pursuant to the foregoing notice of [the lessee] and conversation with [the lessor]." Then, on June 28, Forkner forwarded to the lessor the executed renewal lease. By letter of June 29—when by the terms of the original lease agreement it was too late for the lessee to give written notice of his election—the lessor refused to sign the renewal lease, relying upon the lessee's failure to give him written notice.

From these events we conclude that the lessor waived any such condition to his obligation to renew. During the time before June 1, 1965, the lessee could have protected himself by giving written notice. But he had no reason not to rely upon the oral notice which the lessor actually had received through Forkner and to which he had responded by expressing his wishes as to the term. It was too late, when time had run out, for the lessor to raise, for the first time, the objection that the notice should have been in writing. See Simpson, Handbook of the Law of Contracts, § 170, pp. 349-352 (2d Ed., 1965); 17 Am. Jur. 2d 838-840, Contracts, §§ 392, 393; 17A CJS 688-701, Contracts, §§ 491-493. Whether or not Forkner was authorized to bind the lessor in any phase of this renewal situation is immaterial under these circumstances.

2. The remaining issue relates to the sufficiency of the allegations for specific performance. The lessor urges that the petition does not authorize this relief since specific performance is not a remedy which either party can demand as a matter of absolute right and that the petition does not allege facts to show that the contract is fair, just, and not against good conscience.

As we view this petition it does allege such facts. These parties for almost ten years had occupied the relationship of lessor and lessee. A continuance of that same relationship was sought to be enforced. The option to renew was a part of the consideration for the original lease. The monthly rental in the event of renewal had been agreed upon by them and incorporated in the option provision of the original lease agreement. That the amount so set is fair is shown by the lessor's letter, attached to the petition, notifying the lessee that he would not execute the renewal lease and would consider the lessee a tenant at will "at the rent you are now paying." Also, there are allegations as to large expenditures by the lessee for improvements and as to the lack of any damage or prejudice to the lessor from the form of the notice. Thus, fairness, justness, and good conscience are alleged to result from enforcement of the option to renew; and forfeiture and hardship are alleged to result from lack of such enforcement. Here, equity will extend its hand.

Since we deem the petition sufficient against general demurrer, the judgment complained of is

*Reversed. All the Justices concur.*