A00A0689. GOLDMAN v. VINSON.
(535 SE2d 305)

JOHNSON, Chief Judge.

Marshall Goldman filed a declaratory judgment action to determine whether his tenant, Robert Vinson, had the right to renew a real estate lease agreement and, if so, whether Vinson complied with the contract's requirements for exercising the renewal option. The trial court found that Vinson did have the right to renew and that he exercised that option in accordance with the terms of their agreement. Goldman appeals from that judgment. We affirm.

The relevant, undisputed facts are as follows: Goldman owns a parcel of real estate which he leased to Green Brothers Nursery, Inc. in August 1984 for a 25-year term. On July 15, 1987, Green Brothers entered into a sublease with Vinson in which Vinson would lease a small strip of the property through August 31, 1999. The Green Brothers/Vinson sublease provided that Vinson had the right to renew the sublease for three further five-year periods by sending notice of his intent to renew to Green Brothers via certified mail within 120 days of the lease termination date. On July 21, 1987, Vin-

---

son entered into an agreement with an advertising company to rent the strip to the advertising company for use as a billboard location.

On July 28, 1987, Vinson and Goldman entered into an agreement regarding the same strip of property. In the agreement, Vinson stated that he wished to sublease the property from Green Brothers on the terms set forth in the Green Brothers/Vinson sublease and that he wished to preserve his rights under that sublease in the event the Green Brothers/Goldman lease was terminated for any reason before the end of the latter's stated term. Vinson and Goldman agreed that, as consideration for Goldman's promise, Vinson would pay Goldman $100 each month during the term of the sublease and that if the Green Brothers/Goldman lease was terminated for any reason, Goldman would lease the property to Vinson through August 31, 1999, under the terms set forth in the Green Brothers/Vinson sublease.

In June 1990, the lease between Goldman and Green Brothers was terminated. At that time, Vinson began renting the strip directly from Goldman as provided in the Goldman/Vinson agreement. This continued for nine years.

On April 27, 1999, Vinson sent a letter to Goldman by regular mail acknowledging that the Goldman/Vinson agreement would terminate on August 31, 1999. In the letter, Vinson referred to letters he previously wrote regarding renewal, threatened to remove the billboard if a new agreement with more favorable terms was not reached within 30 days, and said he enclosed a proposed renewal agreement for Goldman's review.

On May 1, 1999, Vinson sent another letter to Goldman, also by regular mail, notifying Goldman of his intention to exercise his option to renew the lease pursuant to the renewal provision contained in the Green Brothers/Vinson sublease. On May 11, 1999, Vinson sent Goldman a facsimile notifying Goldman that Vinson's offer to negotiate a new agreement was being withdrawn and that he would rely on the renewal provision contained in the Green Brothers/ Vinson sublease.

Goldman, contending he was not obligated to renew the sublease, filed a complaint seeking a declaratory judgment regarding his and Vinson's rights under the agreement and also seeking to enjoin Vinson from removing the billboard; if the billboard remained in place and Goldman was not obligated to renew his agreement with Vinson, Goldman might be free to enter into a lease agreement directly with the advertising company. The trial court found that the Goldman/Vinson agreement incorporated the renewal option terms of the Green Brothers/Vinson agreement, that Vinson complied with the renewal option requirements, and that a proper renewal had been accomplished. The trial court denied Goldman's petition for

injunctive relief. Goldman appeals from the trial court's entry of judgment in favor of Vinson regarding the validity of the renewal option.

1. Goldman contends the trial court erred in holding that the option to renew contained in the sublease between Green Brothers and Vinson is incorporated into the Goldman/Vinson agreement, when the latter agreement specifies an expiration date of August 31, 1999, and does not mention an option to renew. We disagree.

Paragraph 2 of the Goldman/Vinson agreement provides that if the Green Brothers/Goldman lease is terminated for any reason, Goldman shall lease the property to Vinson "through August 31, 1999, *under the terms set forth in the [Green Brothers/Vinson] Sublease.*" (Emphasis supplied.) The Green Brothers/Vinson sublease contains the following provision:

18. *Option to Renew:* Provided that [Vinson] is not in default under the terms and conditions of this lease and provided [Green Brothers] decides to exercise its option period(s), [Vinson] is hereby granted the right and privileges of renewing the within lease for Three (3) further periods of Five (5) years upon the same terms and conditions as herein contained. Each renewal option is contingent upon notice given by [Vinson] to [Green Brothers] of [Vinson's] intention to renew not less than 120 days prior to the expiration of the then current term of lease.

Paragraph 14 of the Green Brothers/Vinson sublease provides that all notices required under the agreement shall be given by certified mail, return receipt requested.

As a matter of contract law, incorporation by reference is generally effective to accomplish its intended purpose where the provision to which reference is made has a reasonably clear and ascertainable meaning.[1] By its express terms, the Goldman/Vinson agreement specifically incorporates the Green Brothers/Vinson sublease; the former even attaches and refers to the latter as Exhibit A. The renewal language in the Green Brothers/Vinson sublease has a clear meaning — Vinson may renew the sublease for three five-year periods after its stated termination date of August 31, 1999.

We are not persuaded by Goldman's argument that because the Goldman/Vinson agreement specifies a termination date of August 31, 1999, the agreement must end on that date. The sublease being incorporated also contains that termination date but allows for renewal in spite of the specified date. Goldman expressly agreed to

---

[1] *Town Center Assoc. v. Workman,* 227 Ga. App. 55, 57 (1) (487 SE2d 624) (1997).

lease the property to Vinson under the terms set forth in the sub-lease. One of those provisions gives Vinson the option to renew the lease. We note that as a general rule, where there is any uncertainty as to renewal provisions, the tenant is to be favored.[2] The trial court did not err in finding the new agreement incorporated the renewal provision.

2. Goldman also argues that even if Vinson had the option to renew, he failed to comply with the requirements for exercising the option. Goldman's sole complaint is that Vinson sent the notice of renewal by regular, rather than by certified, mail. We hold that under the circumstances here, the notice was sufficient.

As Goldman points out, in some situations, sending notice of intent to renew by regular mail when the contract states that notice is to be made by certified mail constitutes invalid notice.[3] In *Atkinson v. Cook*,[4] the Supreme Court of Georgia held that a buyer who purported to exercise an option by sending notice via regular mail, when the contract required notice by registered mail, failed to give valid notice. However, in reaching its decision that strict compliance was required, the Supreme Court stated that there was no evidence that the seller waived his right to strict compliance with the option contract's terms or that the seller learned that the option had been purportedly exercised within the option period. The Supreme Court noted that it might have reached a different result if the seller had accepted the buyer's improper notice within the option period or if he had proceeded to a closing based on the improper notice.[5]

In this case, Goldman waived his right to demand strict compliance with the option contract's certified mail requirement, and he learned of Vinson's purported exercise of the option within the option period. In his verified amendment to his complaint, Goldman admits: "as the end of the term of the [Goldman/Vinson agreement] began to draw near, the parties engaged in negotiations regarding the possible renewal of the Agreement"; that on April 27, 1999, Vinson sent him a letter acknowledging that the agreement would terminate in August and threatening to remove the billboard if no agreement was reached; and that on May 1, 1999, Vinson sent him a letter notifying him of his intent to renew the agreement pursuant to the option to renew in the Green Brothers/Vinson sublease.

From these events, we conclude that Goldman waived the certified mail requirement. Although Vinson could have sent the notice by certified rather than regular mail, he had no reason not to rely on the

---

[2] *Felder v. Oldham*, 199 Ga. 820, 826 (2) (35 SE2d 497) (1945).
[3] *Atkinson v. Cook*, 271 Ga. 57, 58 (518 SE2d 413) (1999).
[4] Id.
[5] See id. at 59, n. 8.

notice he sent by first-class mail which Goldman agrees was sent (and which Goldman attached to his amended complaint) and to which Goldman responded with negotiations as to the terms of an extension. There is no allegation or evidence in the record indicating that Goldman did not receive any notice or that he objected to the manner in which notice was given before the option period expired. It was too late, when time had run out, for Goldman to raise the objection that notice should have been sent by certified mail.[6] Furthermore, the evidence shows that Goldman learned within the option period that the option had been purportedly exercised.[7] Under these circumstances, the notice was valid.

*Judgment affirmed. Phipps, J., and McMurray, Senior Appellate Judge, concur.*

DECIDED MAY 31, 2000 —
RECONSIDERATION DENIED JULY 7, 2000 ■

*Krevolin & Horst, Michael D. Flint*, for appellant.
*Mark B. McManus*, for appellee.

---

[6] *Storey v. Austin* 221 Ga. 692, 695-696 (1) (146 SE2d 728) (1966).
[7] *Atkinson*, supra.