IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 12, 2025 Session

## POPLAR AVENUE 1856 CENTER, LLC v. NEXUS EXXON, INC., ET AL.

Appeal from the Chancery Court for Shelby County
No. CH-22-1228     Melanie Taylor Jefferson, Chancellor

_____

No. W2024-01257-COA-R3-CV
_____

This appeal involves a commercial lease of property operated as a convenience store in Memphis. The lease provided that it was to be construed and enforced in accordance with Georgia law. The lease was for an initial term of ten years, but it provided that the tenant had the option to renew the lease for two additional terms of five years commencing at the expiration of the initial term. Near the end of the initial ten-year term, the landlord sent a notice of nonrenewal to the tenant, notifying the tenant that the lease was scheduled to expire because the tenant had failed to timely exercise the option to renew it. One week later, the tenant sent the landlord written notice of its intent to exercise the option to extend the lease for an additional five years. The tenant's letter asserted that the provision of the lease regarding when notice was to be provided "[did] not make any sense" and informed the landlord that the tenant was thereby exercising the option. The landlord filed this lawsuit, asking the trial court to hold that the lease had expired by its terms when the tenant did not timely exercise the option to extend it, and therefore, the landlord was entitled to possession of the property and a judgment for rent at the holdover rate provided in the lease. The tenant filed a counterclaim for declaratory relief. On cross motions for summary judgment, the trial court held that the lease was ambiguous but that the only reasonable interpretation of the lease was that notice of intent to exercise the option was due ninety days before the end of the initial term. Because the tenant failed to provide notice by that date, the trial court concluded that the initial term of the lease expired, the landlord was entitled to possession, and the tenant was liable for holdover rent and attorney fees. The tenant appeals. We affirm and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

Malcolm B. Futhey, III, and Harley M. Chapman, Memphis, Tennessee, for the appellants, Sheikh Moin Ahamed, and Nexus Exxon, Inc.

John J. Heflin and Jack F. Heflin, Memphis, Tennessee, for the appellee, Poplar Avenue 1856 Center, LLC.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

On June 8, 2012, the parties to this lawsuit entered into a commercial lease agreement for property operated as a gas station and convenience store in Memphis, Tennessee. The lease contained the following provisions that are pertinent to this appeal:

> **THIS COMMERCIAL REAL ESTATE LEASE AGREEMENT** ("Agreement") made this 8th day of June 2012, by and between **Poplar Avenue 1856 Center, LLC**, a Georgia limited liability company with an address of P.O. Box 1565, Lawrenceville, GA 30046 ("Landlord") and **Nexus Exxon Inc.**, a Tennessee corporation, and **Sheikh Moin Ahamed**, a resident of the State of Tennessee, with an address of 1856 Poplar Avenue, Memphis, TN 38112 (collectively "Tenant").[1]
> . . . .
> **1. Premises.** Landlord, for and in consideration of the rents, covenants, agreements and stipulations herein contained, to be paid, kept, and performed by Tenant, has leased and rented, and by these presents does lease and rent unto said Tenant, and said Tenant hereby agrees to lease and take upon the term and conditions which hereinafter appear, the following described property municipally known as **1856 Poplar Avenue, Memphis, TN 38112** together with the buildings, improvements and equipment located thereon and being more particularly described on Exbibit "A" attached hereto and incorporated herein by reference (the "Premises").
> **2. Term of Lease.** The Term of this Lease shall be for ten (10) years commencing on the date that Landlord turns over the Premises to Tenant, but not later than May 31, 2012 (the "Commencement Date") and expiring on the date which is ten (10) years from the Commencement Date (the "Term").
> **3. Rental.** (a) Tenant agrees to pay Landlord, promptly on the first day of each month in advance, during the Term, rent as follows:
>
> Years 1-5          Rent $10,000 per month

---

[1] We will refer to the parties in the same manner, as "Landlord" and "Tenant," for purposes of this appeal. Mr. Ahamed is sole owner of Nexus Exxon, Inc.

Years 6-10              Rent $11,000 per month

. . .

**18.** **Entry for Carding, etc.** Landlord may card Premises "For Rent" or "For Sale" sixty (60) days before termination of this Lease. Landlord may enter the Premises at reasonable hours to exhibit same to prospective purchasers or tenants and to make repairs required of Landlord under the terms hereof, or to make repairs to Landlord's adjoining property, if any.

. . .

**21.** **Holding Over.** If Tenant remains in possession of the Premises after expiration of the Term hereof, with or without Landlord's acquiescence and without any express agreement of the parties, Tenant shall be a Tenant at will at 150% the rental rate in effect at the end of the Lease. There shall be no renewal of this Lease by operation of law.

**22.** **Attorney's Fees . . . .** If any rent owing under this Lease is collected by or through an attorney at law, Tenant agrees to pay reasonable attorney's fees. If suit should be brought for recovery of the Premises, or because of any act, which may arise out of the possession of the Premises, by either party, the prevailing party will be entitled to all costs incurred in connection with such action, including reasonable attorney's fees. . . .

**23.** **Service of Notice.** All notices required to be sent to Tenant or Landlord under the terms of this Lease shall be given via personal delivery, by a nationally recognized overnight carrier, or by USPS certified mail, with return receipt requested, and sent to following addresses: . . . .

. . .

**26.** **Time of Essence.** Time is of the essence for the performance by the parties of the terms, duties and obligations of this Lease.

. . .

**31.** **Law and Venue.** This Lease shall be construed under and enforced in accordance with the laws of the State of Georgia. . . .

. . .

**33.** **Option to Renew.** Provided that Tenant is not in Default in its performance under this Lease, Tenant shall have the option to renew the Lease for two (2) additional terms of five (5) years commencing at the expiration of the initial Term. All of the terms and conditions of this Lease shall apply during the renewal term except that the rent will be as follows:

    1. Years 11-15         Rent $12,000 per month
    2. Years 16-20         Rent $13,000 per month

The option shall be exercised by written notice given to Landlord no less than ninety (90) days prior to the initial Term. If notice is not given in the manner provided herein within the time specified, this option shall expire.

Again, the lease was executed on June 8, 2012.

On April 12, 2022, Landlord sent a "Notice of Non-Renewal" of the lease to Tenant. The letter stated,

Dear Tenant:

Landlord hereby notifies Tenant that the Lease under which Tenant occupies the Premises is scheduled to expire on June 30, 2022 ("Expiration Date"), as Tenant failed to timely renew the Lease. Accordingly, Tenant is obligated under the Lease to surrender possession of the Premises to Landlord by the Expiration Date. In the process of vacating the Premises, Tenant should be careful to comply with all applicable provisions of the Lease.
. . .
Tenant also should note the serious financial consequences of a failure to return possession of the Premises to Landlord in a timely manner. "Time is of the essence for the performance by the parties of the terms, duties and obligations of this Lease." (Lease, §26).
To be clear, Landlord demands possession of the Premises from Tenant upon the Expiration Date, possession is to be returned to Landlord by no later than June 30, 2022. In the event that Tenant fails to comply with the Lease with regard to its obligations surrounding the surrender of possession, Landlord will exercise whatever legal rights and remedies it may have under the Lease and the applicable law that it considers appropriate under the circumstances. Take notice that if Landlord has to bring a suit for recovery of the Premises Landlord is entitled to recover our attorneys fees from Tenant. (Lease, §22) Tenant should govern its response to this letter accordingly.

One week later, on April 19, Tenant sent a letter to Landlord entitled "Exercise of option for 1856 Poplar Avenue[.]" The letter stated, "Mr. Ahamed hereby provides notice of his intent to exercise his option to extend the lease for an additional five (5) years." It further explained,

The lease gives Mr. Ahamed the option "to renew the Lease for two (2) additional terms of five (5) years commencing at the expiration of the initial Term." However, Lease's language regarding the timing for providing notice does not make any sense. The Lease required "written notice given to the Landlord **no less than ninety (90) days prior to the initial Term**." However, "ninety (90) days prior to the initial term" would have been on or about March 10, 2012 — before the Lease was even executed. It was

impossible for my client to provide notice of exercising his option before he even signed the Lease. Such a deadline is unreasonable per se. Also, this provision was drafted by the Landlord and must be construed against the Landlord.

Thus, the letter stated that Tenant "does hereby provide notice of his intent to exercise the option," and "[a]ny delay alleged by the Landlord is immaterial."

Four months later, in August 2022, Landlord instituted this action by filing a complaint for possession of the property and enforcement of the lease, or in the alternative, reformation of the lease. The complaint alleged that the parties had entered into a ten-year lease with a commencement date of May 31, 2012, and therefore, it expired on May 30, 2022. Landlord noted that it had mistakenly stated in its Notice of Non-Renewal letter that the lease expired on June 30, 2022, but May 30 was "the correct initial term expiration date" given a ten-year calculation. Landlord alleged that Tenant failed to give the ninety-day written notice required by the lease for exercising the option, so the lease expired by its terms. The complaint acknowledged that Tenant attempted to exercise the option via its April 19 letter, in which it took the position that the notice provision was unreasonable so there was "no deadline at all for exercising the option to extend the Lease." Landlord asserted that Tenant's position was "itself unreasonable and contrary to normal leasing practice which affords a landlord a period of time before the end of any lease term to seek a replacement tenant." Landlord contended that the lease's notice provision plainly required ninety days' notice, but in the event the court did not interpret it in that manner, Landlord asked the court to reform the notice provision to correct a scrivener's error, such that it would state "ninety days prior to the [end of the] term." Either way, the complaint asserted that Tenant's notice letter of April 19 was untimely, as it was dated only 41 days prior to the expiration date of May 30. The complaint also noted that even utilizing the mistaken expiration date of June 30 listed in the Notice of Non-Renewal letter, Tenant's April 19 letter was still late, as it was only 72 days prior to that mistakenly listed expiration date.

The first cause of action listed in the complaint was for "Breach of Lease & Enforcement of Lease." Landlord asserted that the lease had expired by its terms, Tenant's untimely attempt to exercise the option was ineffective, Tenant had refused to turn over possession of the property, and Tenant was in breach of the lease by failing to pay the holdover rental rate provided in the lease. Landlord sought injunctive relief restoring its possession of the premises and a judgment for the unpaid rent at the holdover rate. Alternatively, should the court decline to enforce the lease as written, Landlord sought reformation to correct a scrivener's error. Landlord asserted that the parties intended to agree that written notice would be required ninety days "before the end of the existing term," which was in accordance with standard leasing practices. Finally, Landlord alleged that Tenant's continued possession of the premises after termination of the lease constituted unlawful detainer under Tennessee law, entitling Landlord to a writ of possession.

Landlord also requested an award of attorney fees and costs as provided in the lease.

Tenant filed an answer and counterclaim for declaratory relief. Tenant asserted that the lease had an initial ten-year term "that ended on or about May 31, 2022." Tenant noted that it had the option to renew the lease for two additional five-year terms commencing at the expiration of the initial term, but Tenant asserted that "the Lease's language regarding the timing for providing notice was nonsensical." Because the lease required notice of renewal "no less than ninety (90) days prior to the initial Term," Tenant maintained that notice was required sometime in March 2012, "before the Lease was even executed." Thus, Tenant asserted that it was "impossible, impractical, and completely unreasonable" to provide notice of exercising an option before the parties had even signed a lease. Tenant contended that the lease had to be construed against Landlord as the party who drafted it. Tenant also asserted that its April 19 letter constituted sufficient notice of its intent to exercise the option and extend the lease. It sought a declaratory judgment that the lease had been extended for a five-year period, in addition to an award of attorney fees.

After a period of discovery, Landlord filed a motion for summary judgment in December 2023. Landlord asserted that there were no genuine issues of material fact and that it was entitled to summary judgment on all issues asserted in its complaint as well as those raised in Tenant's counterclaim. Landlord characterized this suit as a straightforward complaint to recover possession of property and unpaid rent after Tenant failed to exercise the option to extend the lease. According to Landlord, Tenant did not dispute its failure to give the ninety-day notice, and Mr. Ahamed admitted during his deposition that he failed to read the lease to even be aware of the notice requirement. Landlord contended that Tenant was attempting to excuse its failure by assigning a strained, illogical, and nonsensical interpretation to the renewal provision of the lease, claiming it required notice before the initial term even began, so this eliminated any need for notice whatsoever. Landlord claimed that the parties would not have intended to create a ninety-day notice requirement and simultaneously eliminate it due to impossibility. Instead, according to Landlord, the parties plainly intended to require notice ninety days before the end of the lease term so that Landlord could make plans for a replacement tenant consistent with common commercial practice. Landlord calculated the ten-year term as ending on May 31, 2022, meaning that the ninety-day notice was required on March 2, 2022. Landlord noted that Tenant did not attempt to exercise the option to renew the lease until April 19, a week after receiving the Notice of Non-Renewal letter from Landlord, and only 42 days before the lease ended. Landlord sought a judgment for the difference between the standard rent Tenant had been paying since June 2022, after the lease expired, and the amount it should have been paying at the holdover rental rate, as well as attorney fees.

In support of its motion for summary judgment, Landlord submitted deposition testimony of Mr. Ahamed and the affidavit of Landlord's manager, Scott Moon. Mr. Moon stated that despite the Notice of Non-Renewal letter sent by Landlord, Tenant had refused to turn over possession of the premises upon expiration of the lease. He stated that Tenant

- 6 -

had paid $11,000 in rent in June 2022 and $12,000 for the months since then, but the holdover rent rate pursuant to the lease was $16,500. Thus, Mr. Moon stated that Tenant owed $77,500 in unpaid holdover rent as of the end of November 2023, with more accumulating each month. He also stated that Landlord was seeking an award of attorney fees and would file an affidavit of attorney fees prior to the hearing.

Tenant filed a cross motion for summary judgment, maintaining that it properly exercised the first option under the lease. To get there, Tenant first argued that the lease clearly and unambiguously required notice ninety days before the initial term began, which was "impossible." Tenant asserted, "While the phrase . . . does not make sense, the text is clear." Due to this claimed impossibility in the notice provision, Tenant argued that the ninety-day notice requirement was unenforceable and must be declared of no effect. Because the lease contained a severability clause, Tenant argued that the remainder of the lease remained in effect. Specifically, Tenant argued that the notice provision could be "voided without voiding [Tenant's] option rights under the Lease." Tenant filed a verified statement from Mr. Ahamed, who acknowledged that he is from Bangladesh, his first language is Bengali, he did not fully read the lease, which was drafted by Landlord, before signing it, and he "was unaware of the option's notice requirements at the time of signing."

Next, Tenant argued that it sufficiently exercised its option to renew the lease on two occasions: in its April 19 letter, or in a separate "Fixture Fee Agreement" the parties had executed in 2019. According to the two-page Fixture Fee Agreement, Tenant desired that Landlord install new equipment for its use in operating its business at the premises, but Landlord had no duty or obligation to replace and update equipment under the lease. So, Landlord agreed to purchase and install certain equipment in the separate Fixture Fee Agreement. The agreement provided that the equipment would remain the property of Landlord, and Tenant would "pay Landlord additional monthly payments on the 15th each month following the execution of this Agreement as further set forth in Exhibit B," with such payments to be "in addition to any payments required under the Lease[.]" The attached Exhibit B listed additional payments for a time period from March 15, 2019, until January 15, 2026. Because these payments extended 42 months beyond the initial lease term ending in 2022, Tenant argued that the Fixture Fee Agreement showed the parties "contemplated" that Tenant would remain in the property through at least the first option period, and it should therefore be construed as an agreement for Tenant to exercise the first five-year option. In conclusion, Tenant claimed it did not owe holdover rent, it was paying the amount of rent due under the lease if it had properly exercised the option, and it was not in default.

Landlord filed a response in opposition to Tenant's motion for summary judgment and in further support of its own motion. It argued that the lease should not be construed in a manner that would render any of its provisions meaningless. Landlord pointed out that the lease allowed it to enter the premises to card it for rent or sale sixty days before the lease ended, and the only way the Landlord could have known whether to do so was if

Tenant was required to give notice of its decision regarding whether to extend the lease ninety days before the end of the existing lease term. Landlord also argued that such advance notice is universal practice for commercial leases. Landlord submitted a supplemental affidavit from Mr. Moon, who stated that he had been actively involved in the commercial leasing business for over 25 years and had signed thousands of commercial leases during that time. Mr. Moon explained, "Consistent with universal industry practice, whenever a lease has included an option to extend the lease term, the lease has either provided that it will automatically renew unless the tenant gives advance notice of nonrenewal or the lease has required that advance notice be given by the tenant of its exercise of the option to extend the lease term." In either scenario, Mr. Moon said, the Landlord is provided with advance notice of whether the lease will be extended so that it can make arrangements to secure a replacement tenant before the end of the term. Mr. Moon said he had never seen and was unaware of any instance in which a commercial lease with an option to extend did not require one of these two types of advance notice. Thus, Mr. Moon stated that Tenant's suggestion that the notice provision should be eliminated entirely was "directly contrary to universal practice in the commercial leasing industry." He also provided updated figures as to the amount of holdover rent owed by Tenant as of May 2024, with that sum totaling $109,000.[2]

Finally, in response to Tenant's argument regarding the Fixture Fee Agreement, Landlord argued that the agreement itself contained provisions that were directly contrary to Tenant's arguments regarding its impact on the lease. It provided:

> 3.      Nothing herein shall be construed by either party to extend the term of the Lease.
> 4.      Except as expressly set forth in this Agreement, the Lease and any other documents related to the Premises are hereby ratified and remain in full force and effect. Each party acknowledges and agrees that no representations, inducements, promises or statements, written, oral or implied, have been made by any party or anyone acting on behalf of any party which are not embodied in the Lease or this Agreement, and each party agrees that no agreement not set forth in writing in this Agreement or the Lease is valid or binding.

Landlord also argued that any extension or renewal of the lease term had to be accomplished in compliance with the lease, which required written notice provided to a listed address. Landlord insisted that Tenant's failure to timely extend the lease was

---

[2] In its reply brief on appeal, Tenant argues that Mr. Moon's supplemental affidavit cannot be considered because it was not referenced in Landlord's statement of undisputed facts. However, Tenant did not object to the supplemental affidavit in the trial court. As such, he cannot raise this argument for the first time on appeal. *See Martin v. Rolling Hills Hosp., LLC*, 600 S.W.3d 322, 336 (Tenn. 2020) (quoting *State v. Rowland*, 520 S.W.3d 542, 545 (Tenn. 2017)) ("[A]s a general rule, 'issues raised for the first time on appeal are waived.'").

dispositive of the issues before the court.

In July 2024, the trial court entered an order granting Landlord's motion for summary judgment and denying Tenant's motion. The trial court found that the lease was executed in 2012, and Mr. Ahamed knew when he entered the lease that it was for ten years with options for additional five-year terms. The trial court found that Mr. Ahamed had no discussion with Landlord about Section 33, regarding the option to renew, before 2022, and he first read that paragraph of the lease after he received the Notice of Non-Renewal from Landlord. The trial court noted that Tenant did not send any notice exercising the option to extend the lease prior to ninety days before the original term ended.

Moving to its conclusions of law, the trial court first found that the notice provision of the lease was ambiguous in providing that notice was required "no less than ninety (90) days prior to the initial Term." As such, the court found that the provision must be construed by the court utilizing appropriate rules of contract construction. The trial court looked to Georgia law, especially as it related to contracts containing exercisable options. The court also noted a Georgia statute specifically setting out general rules of contract construction for courts to apply. Ultimately, the trial court concluded that "[t]he governing principles of contract construction recited in these Georgia cases are consistent with how courts in other states including Tennessee require that contracts be construed." The court noted that all provisions of the contract should be considered and construed in harmony, giving effect to all of the provisions if possible rather than leaving any part having no effect.

Applying the rules of contract construction, the trial court found that "the only reasonable interpretation of the disputed language in Section 33 of the Lease, and the only interpretation consistent with the other Lease provisions and with universal practice in commercial lease agreements that contain exercisable options," is that written notice of Tenant's exercise of the option to extend the lease term was required "not less than ninety (90) days before the end of the initial term." Because Tenant failed to give such notice, the trial court found that the lease terminated at the end of the initial ten-year term. Although Tenant had argued that it "substantially complied" by giving written notice after the deadline passed, the trial court found that this argument failed because the contract provided that time was of the essence, and Georgia law strictly enforces the time requirements contained in contracts with option provisions. As for Tenant's argument regarding the Fixture Fee Agreement impliedly extending the term of the lease, the trial court found that the lease expressly required written notice of the exercise of the option to extend, and the Fixture Fee Agreement contained two paragraphs directly contradicting Tenant's argument.

In conclusion, the trial court found that Tenant owed Landlord unpaid holdover rent since June 1, 2022, in the total sum of $114,500. It also found that Landlord was entitled to possession of the premises. The court found that Landlord was also entitled to recover its attorney fees, which the parties had stipulated equaled $43,213.50 and $1,143.55 in

expenses. Accordingly, the trial court awarded Landlord a total judgment of $158,857.05. Tenant timely filed a notice of appeal.

## II. ISSUES PRESENTED

Tenant presents the following issues for review on appeal:

1. Did the trial court erroneously grant summary judgment in favor of Landlord, in holding that Tenant breached its commercial lease by not complying with a nonsensical option provision that required written notice be "given to Landlord no less than ninety (90) days prior to the initial Term" – meaning notice was due 90 days before the Lease was even signed – that the trial court deemed susceptible of multiple meanings and therefore ambiguous, rather than simply being impossible and therefore unenforceable?

2. Did the trial court err in granting the Landlord summary judgment regarding the nonsensical option-notice provision where the 90-day notice requirement was immaterial and Tenant provided written notice 71 days before the option period began as well as two years earlier through the 2019 Fixture Fee Agreement?

3. Did the trial court err in granting the Landlord summary judgment and holding that Tenant has not given notice of its intent to exercise its first option by entering into the 2019 Fixture Fee Agreement that required payments from Nexus through nearly 4 years of the first 5-year option period?

For the following reasons, we affirm the decision of the chancery court and remand for further proceedings.

## III. DISCUSSION

To begin, we note that "[o]ur standard of review on appeal is a procedural matter governed by Tennessee law." *Boswell v. RFD-TV the Theater, LLC*, 498 S.W.3d 550, 557 (Tenn. Ct. App. 2016). Thus, even if a contract contains a choice of law provision providing that the agreement will be governed by the law of another state such that the chosen law "governs the interpretation of the agreement, Tennessee law governs procedural matters, including the applicable standard of review." *Cardinal Health 108, Inc. v. E. Tenn. Hematology-Oncology Assocs., P.C.*, No. E2015-00002-COA-R3-CV, 2016 WL 158090, at *2 (Tenn. Ct. App. Jan. 14, 2016) (citing *Charles Hampton's A-1 Signs, Inc. v. Am. States Ins. Co.*, 225 S.W.3d 482, 487 (Tenn. Ct. App. 2006)); *see also Harris v. McMichael*, No. E2020-00817-COA-R3-CV, 2021 WL 5274050, at *8 n.4 (Tenn. Ct. App. Nov. 12, 2021) ("We apply Tennessee's procedural law, which includes the standard of review."). We review a trial court's decision on a motion for summary judgment de novo with no presumption of correctness. *Lemon v. Williamson Cty. Sch.*, 618 S.W.3d 1, 12 (Tenn. 2021) (citing *Tatham v. Bridgestone Ams. Holding, Inc.*, 473 S.W.3d 734, 748 (Tenn. 2015)).

### A.    *Interpretation of the Lease*

Under Georgia law, "[t]he cardinal rule of contract construction is to ascertain the intention of the parties." *Langley v. MP Spring Lake, LLC*, 834 S.E.2d 800, 804 (Ga. 2019) (quoting *Unified Gov't of Athens-Clarke Co. v. Stiles Apartments, Inc*., 764 S.E.2d 403 (Ga. 2014)).  When the terms of the contract are clear and unambiguous, Georgia courts look "only to the contract itself to determine the parties' intent." *Id.*  "An ambiguity is defined as duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and also signifies of doubtful or uncertain nature; wanting clearness or definiteness; difficult to comprehend or distinguish; of doubtful purport; open to various interpretations." *Liggins v. Parkwood Living, LLC*, 907 S.E.2d 731, 737 (Ga. Ct. App. 2024) (quoting *Greenberg Farrow Architecture v. JMLS 1422*, 791 S.E.2d 635 (Ga. Ct. App. 2016)).  "A contract is ambiguous if the words used therein leave the intent of the parties in question — i.e., that intent is uncertain, unclear, or is open to various interpretations." *Anderson v. David*, 889 S.E.2d 114, 119 (Ga. Ct. App. 2023) (quoting *Doxey v. Crissey*, 846 S.E.2d 166 (Ga. Ct. App. 2020)).

Here, the contract provided:

> **33.    <u>Option to Renew.</u>** Provided that Tenant is not in Default in its performance under this Lease, Tenant shall have the option to renew the Lease for two (2) additional terms of five (5) years commencing at the expiration of the initial Term.  All of the terms and conditions of this Lease shall apply during the renewal term except that the rent will be as follows:
>
> > 1. Years 11-15                     Rent $12,000 per month
> > 2. Years 16-20                     Rent $13,000 per month
>
> The option shall be exercised by written notice given to Landlord no less than ninety (90) days prior to the initial Term.  If notice is not given in the manner provided herein within the time specified, this option shall expire.

In our view, the meaning of this provision is unclear and open to various interpretations.  The first sentence provides that Tenant will have the option to renew the lease for two additional terms commencing at the expiration of the initial term *provided that* Tenant is not in default in its performance under the lease.  This sentence suggests that such a determination would be made during the term of the lease, once Tenant has been performing its obligations for a period of time.  However, the sentence requiring written notice ninety days "prior to the initial Term," when read in isolation, could reasonably be read as requiring notice ninety days before the initial ten-year term began.

We note, however, that the lease contains a separate paragraph that appears to define

- 11 -

the capitalized word "Term."  It provides,

> **2.** **Term of Lease.** The Term of this Lease shall be for ten (10) years commencing on the date that Landlord turns over the Premises to Tenant, but not later than May 31, 2012 (the "Commencement Date") and expiring on the date which is ten (10) years from the Commencement Date (the "Term").

Landlord suggests that this paragraph can reasonably be read to mean that the defined word "Term" refers to "the date which is ten (10) years from the Commencement Date."  Thus, notice would be due ninety days prior to "the date which is ten (10) years from the Commencement Date," i.e., the end of the term.  Or, Landlord also recognizes that "Term" could refer to the entire ten-year period, with a defined end date ten years from the commencement date.  We conclude that the meaning of this paragraph is not entirely clear, and it is likewise open to various interpretations, so it does not clarify when notice was to be provided.

According to the Georgia Supreme Court,

> In the face of ambiguity, "we must look to the entirety of the [a]greement to determine the intent of the parties. Indeed, it is axiomatic that contracts must be construed in their entirety and in a manner that permits all of the terms contained therein to be consistent with one another." (Citations and punctuation omitted.) *Sutherlin v. Sutherlin*, 301 Ga. 581, 585 , 802 S.E.2d 204 2017. Further, where there is ambiguity, the agreement will be construed against the drafter and in favor of the non-drafter. *See Hertz Equip. Rental Corp. v. Evans*, 260 Ga. 532, 532, 397 S.E.2d 692 (1990) ("Under the statutory rules of contract construction, if a contract is capable of being construed two ways, it will be construed against the preparer and in favor of the non-preparer."); *Winterboer v. Floyd Healthcare Mgmt., Inc.*, 334 Ga. App. 97, 103, 778 S.E.2d 354 (2015) ("[W]hen the construction of a contract is doubtful, the construction that goes most strongly against the drafter of the agreement is to be preferred." (footnote and punctuation omitted)); OCGA § 13-2-2 (5) ("If the construction is doubtful, that which goes most strongly against the party executing the instrument ... is generally to be preferred[.]"). However, in construing a provision against the drafter, it does not follow that the non-drafter's interpretation automatically controls. *See DIRECTV, Inc. v. Imburgia*, --- U.S. ----, 136 S.Ct. 463, 470, 193 L.E.2d 365 (2015) ("[T]he reach of the canon construing contract language against the drafter must have limits, no matter who the drafter was."); *In re Estate of McKitrick*, 326 Ga. App. 702, 706, 757 S.E.2d 295 (2014) ("It is true that a construction against the drafter is preferred. OCGA § 13-2-2 (5). But no canon of interpretation is absolute." (punctuation omitted)). *See also Restatement (Second) of Contracts* § 206 cmt. a (1981) ("[T]he rule [construing contract language

against the drafter] does not apply if the non-drafting party's interpretation is unreasonable."). Thus, the interpretation put forward by the non-drafting party must be a reasonable one.

*Langley*, 834 S.E.2d at 804.

A Georgia statute also provides rules for interpretation of contracts. It provides:

The following rules, among others, shall be used in arriving at the true interpretation of contracts:
(1) Parol evidence is inadmissible to add to, take from, or vary a written contract. All the attendant and surrounding circumstances may be proved and, if there is an ambiguity, latent or patent, it may be explained; so, if only a part of a contract is reduced to writing (such as a note given in pursuance of a contract) and it is manifest that the writing was not intended to speak the whole contract, then parol evidence is admissible;
(2) Words generally bear their usual and common signification; but technical words, words of art, or words used in a particular trade or business will be construed, generally, to be used in reference to this peculiar meaning. The local usage or understanding of a word may be proved in order to arrive at the meaning intended by the parties;
(3) The custom of any business or trade shall be binding only when it is of such universal practice as to justify the conclusion that it became, by implication, a part of the contract, except in regard to those transactions covered by Title 11;
(4) The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part;
(5) If the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred;
(6) The rules of grammatical construction usually govern, but to effectuate the intention they may be disregarded; sentences and words may be transposed, and conjunctions substituted for each other. In extreme cases of ambiguity, where the instrument as it stands is without meaning, words may be supplied;
(7) When a contract is partly printed and partly written, the latter part is entitled to most consideration;
(8) Estates and grants by implication are not favored; and
(9) Time is not generally of the essence of a contract; but, by express stipulation or reasonable construction, it may become so.

Ga. Code Ann. § 13-2-2. In addition, "[w]e note that as a general rule, where there is any

uncertainty as to renewal provisions, the tenant is to be favored." *Goldman v. Vinson*, 535 S.E.2d 305, 307 (Ga. Ct. App. 2000). However, "no canon of interpretation is absolute. Each may be overcome by the strength of differing principles that point in other directions." *In re Est. of McKitrick*, 757 S.E.2d 295, 299 (Ga. Ct. App. 2014) (citing *Estate of Pitts v. City of Atlanta*, 746 S.E.2d 698 (Ga. Ct. App. 2013)).

Here, the lease clearly required advance notice of ninety days in order to exercise the option to extend the lease. The only dispute is when that ninety-day notice was to be given. Landlord suggests that it was ninety days before the term ended. Tenant suggests that it was ninety days before the parties signed the lease. On appeal, Tenant concedes that under its proposed interpretation, written notice of renewal was "due 90 days before the original lease even starts," and therefore, "the notice requirement is obviously impossible to perform given that the Parties did not even have a signed agreement on the date that notice was due." Notably, Tenant does not suggest that this was the parties' intention at the time of signing. Rather, Tenant admits that he "had not fully read the Lease before signing and was unaware of the impossible notice requirements at the time of signing." Tenant also concedes that this interpretation renders the provision "nonsensical." The lease specifically provided that "[t]he option shall be exercised by written notice given to Landlord no less than ninety (90) days prior to the initial Term. If notice is not given in the manner provided herein within the time specified, this option shall expire." Tenant does not explain why the parties would have included an option provision at all if it was impossible to exercise it. Simply put, there would be no reason to execute a contract containing an option provision if the parties knew by that time that the deadline for exercising the option had already passed and the option had expired months earlier. At the same time, if the parties knew three months prior to execution that Tenant *did* want a longer lease term, they could have easily drafted a lease for a term of fifteen or twenty years.

"In the construction of a contract the important thing is to ascertain the intention of the parties, and to this end the whole contract must be considered." *Denise v. Paxson*, 413 S.E.2d 433, 434 (Ga. 1992) (quoting *Hull v. Lewis*, 180 S.E. 599 (Ga. 1935)). "[T]he context in which a contractual term appears *always* must be considered in determining the meaning of the term." *Langley*, 834 S.E.2d at 805. In *Langley*, for instance, the Georgia Supreme Court concluded that the Court of Appeals had erred by "focusing narrowly on the language of [a particular] Provision without regard to the full context of the lease agreement of which it was a part." *Id.* at 803. The Supreme Court acknowledged that if "[c]onsidered in a vacuum, the text of the [] Provision may appear ambiguous." *Id.* at 804-805. "However," the Court explained, "our analysis is neither confined to this sole provision nor to the literal meaning of the phrase" at issue. *Id.* at 805. "Words, like people, are judged by the company they keep." *Id.* (quoting *Anderson v. Anderson*, 552 S.E.2d 801 (Ga. 2001)). In order to ascertain what the parties intended, "we must read that provision in light of the contract as a whole and in the legal context in which it was created." *Id.* In *Langley*, the Court found that uncertainty was created due to "conflict between the broad literal meaning of the phrase and the limited nature of the contract." *Id.*

- 14 -

In the face of such ambiguity, the agreement had to be construed against the drafter, but with a construction nevertheless "bound both by reasonableness and our goal of ascertaining the intention of the parties." *Id.*

The Georgia Supreme Court's decision in *Sutherlin v. Sutherlin*, 802 S.E.2d 204 (Ga. 2017), is also instructive. The Court was tasked with construing the term "corporate income tax liability" in a marital separation agreement that required the husband to hold the wife harmless as to the "corporate income tax liability" of the family businesses. *Id.* at 208. Due to the company's status as an S corporation, the corporation as an entity had no "corporate income tax liability." *Id.* None of the corporations owed any income taxes; instead, their shareholders did. *Id.* Thus, construing the term to mean what the husband claimed "would render it essentially without meaning, thus violating the maxim that '[t]he courts should avoid any construction that renders portions of the contract language meaningless.'" *Id.* (quoting *Horwitz v. Weil*, 569 S.E.2d 515 (Ga. 2002)). The Court explained, "[R]ather than construing 'corporate income tax liability' as referring to a liability that cannot exist, we construe that term to mean those tax liabilities that flow from the corporation." *Id.* at 209. The agreement "could have been more clearly drafted," but the "complete text of the Agreement" demonstrated the parties' intent. *Id.*

In *Erquitt v. Solomon*, 218 S.E.2d 172, 173 (Ga. Ct. App. 1975), the Georgia Court of Appeals considered an alleged ambiguity in a contract similar to the one before us, consisting of a lease agreement with an option to renew or extend the lease. Specifically, the contract provided for a ten-year lease term, but it also stated that the term "shall begin on the first day of January, 1963 and end on the last day of December, 1973." *Id.* The tenant was given an option "for an additional 10 years term . . . provided that Lessor is notified in writing not less than sixty (60) days before the expiration of the ten year term of their election to exercise said option." *Id.* at 174. The tenant attempted to exercise the option to renew in April 1973, but the landlord insisted that the ten-year lease had expired by its terms. *Id.* at 173-74. On appeal, the Court emphasized that "[t]he whole contract must be looked to in arriving at the construction of any part." *Id.* at 174. In doing so, the Court found it apparent that the listed end date of 1973 was "an unintentional miscalculation of the scrivener," as the lease stated in several places that it was for a term of ten years, not eleven. *Id.* Giving effect to the clerical error would change the term to eleven years, "defeating the manifest intention of the parties." *Id.* On the other hand, "[t]o give it the construction that the term was for ten years [was] to reconcile its different parts, which [was] in accord with the real purpose of the judicial construction of contracts." *Id.* "Having determined that the lease agreement was for a term of ten years," the notice of renewal was required sixty days before expiration of the ten-year term. *Id.* Thus, "the effort to renew the option came after its expiration and was too late." *Id.*

Subsequently, in *Whitmire v. Colwell*, 285 S.E.2d 28 (Ga. Ct. App. 1981), the Georgia Court of Appeals considered another landlord-tenant dispute involving a lease and option to renew. In that case, the original lease term was five years, and the lease provided

that the tenant had the "option to extend this lease for a period of five (5) years from the date of the expiration hereof, upon the same terms and conditions as prior to the expiration of the term hereof." *Id.* at 29. Notably, however, the lease did not specify the *manner* of exercising the option. *Id.* As a result, the tenants argued that "they were not required to provide notice of their intention to exercise the option." *Id.* However, the Court disagreed. Looking at the entirety of the lease, it provided that "[i]n the event lessee continues to occupy the premises after the last day of the term hereby created, or after the last day of any extension of said term, and the lessor elects to accept rent thereafter, a tenancy from month to month only shall be created and not for any longer period." *Id.* The Court concluded that this paragraph would be rendered meaningless and of no effect if no notice was required to exercise the option. *Id.* Because courts must "give a reasonable, lawful and effective meaning to all manifestations of intention by the parties rather than an interpretation which leaves a part of such manifestations unreasonable or of no effect," the Court held that the tenants "were required to take some action prior to the expiration of the original term of the lease to place the appellee on notice of their intention to exercise the option." *Id.* Thus, even in the absence of any provision specifying the manner of exercising the option, the Court determined that the tenant was required to take action *prior to the expiration of the original term* to notify the landlord of their intent. *See id.*; *see also Shaw v. Bray*, 94 S.E. 1008, 1009 (Ga. 1918) ("In the absence of a specific provision in a lease fixing the time for exercise of an election to renew, the option continues during the whole of the original term or tenancy. But the election must be made or declared within that time; . . . and where the lease fixes the time when the renewal shall be taken and given, such provision controls.").

Keeping these principles in mind, and examining the entirety of the lease in this case, we conclude that the parties' intention is clear and that the ninety-day written notice was required prior to the expiration of the existing term. We reiterate that under Tenant's interpretation, the option would have already expired before the contract was executed, rendering the option provision meaningless. "[A] contract must be construed to 'give a reasonable, lawful, and effective meaning to all manifestations of intention by the parties rather than an interpretation which leaves a part of such manifestations unreasonable or of no effect.'" *Bryan v. Brown Childs Realty Co.*, 556 S.E.2d 554, 561 (Ga. Ct. App. 2001) (quoting *Sheridan v. Crown Capital Corp.*, 554 S.E.2d 296 (Ga. Ct. App. 2001)). "Thus, the favored construction will be that which gives meaning and effect to all the terms of the contract over that which nullifies and renders meaningless a part of the document." *Overlook Gardens Props., LLC v. Orix, USA, LP*, 884 S.E.2d 433, 441 (Ga. Ct. App. 2023) (quoting *Primary Investments v. Wee Tender Care III*, 746 S.E.2d 823 (Ga. Ct. App. 2013)). Here, the lease provided that Landlord could enter the premises to card it for rent or sale "sixty (60) days before termination of this Lease." This provision is consistent with Landlord's position that written notice of the exercise of the option was required ninety days before the term ended. We also note, again, that the option provision itself provided that Tenant would have the option to renew the lease for two additional terms commencing at the expiration of the initial term *provided that* Tenant was not in default in its

performance. This suggests that the decision would be made during the term of the lease, not months before it began. Thus, we agree with the trial court's interpretation of the lease as requiring Tenant to give written notice of its exercise of the option to renew not less than ninety days before the end of the term.[3]

## B. Compliance with the Notice Provision

We now consider Tenant's subsequent arguments regarding whether it complied with the notice provision.

At the outset, we will address Tenant's contention that the ten-year term ended on June 30, 2022, because the lease was not signed until June 8, 2012. The lease provided that the term of the lease was "for ten (10) years commencing on the date that Landlord turns over the Premises to Tenant, but not later than May 31, 2012 (the 'Commencement Date') and expiring on the date which is ten (10) years from the Commencement Date (the 'Term')." As such, the ten-year term commenced on May 31, 2012, and it expired on the date ten years later, May 31, 2022. Tenant's suggestion that the ten-year term of lease was somehow tied to the date of execution of the lease is not supported by Georgia law. *See Am. Cyanamid Co. v. Ring*, 286 S.E.2d 1, 3 (Ga. 1982) ("the effective date of a contract is not the date of execution where the contract expressly states that its terms are to take effect at an earlier date," as "contracting parties may agree to give retroactive effect . . . to their contracts as they see fit") (quotation omitted); *see also Miller v. Lomax*, 596 S.E.2d 232, 237 (Ga. Ct. App. 2004) ("It is well settled that, as between the parties to a contract, the effective date of their agreement may precede the date of physical execution."). Thus, Tenant's ninety-day notice of renewal had to be provided no less than ninety days prior to the end of the term on May 31, 2022.

Tenant argues that the written notice provision is an immaterial provision of the lease and that substantial compliance with the ninety-day provision suffices. Thus, according to Tenant, the letter it sent to Landlord on April 19 substantially complied with the notice provision. We disagree.

The Georgia Court of Appeals considered a similar argument in *Piedmont Ctr. 15, LLC v. Aquent, Inc.*, 649 S.E.2d 733 (Ga. Ct. App. 2007). In that case, a commercial lease had an original term of seven years, but the lease provided "a cancellation option that

---

[3] We recognize Tenant's argument that impossible conditions are void. *See* Ga. Code Ann. § 13-3-5 ("Impossible, immoral, and illegal conditions are void and are binding upon no one."); *see also Allen v. CFYC Constr., LLC*, 842 S.E.2d 297, 301 (Ga. Ct. App. 2020) ("[I]mpossibility of performance is a defense to the enforcement of a contract."). However, we must begin by interpreting the contract in order to determine what it required. *See, e.g.*, *PraultShell, Inc. v. River City Bank*, 880 S.E.2d 616, 619 (Ga. Ct. App. 2022); *Ambrosio v. Giordano*, 856 S.E.2d 349, 353-54 (Ga. Ct. App. 2021); *Miller v. GGNSC Atlanta, LLC*, 746 S.E.2d 680, 684 (Ga. Ct. App. 2013). Under our interpretation of the contract, it was not impossible to comply with the option's notice provision.

allowed [the tenant] to cancel that portion of the Lease related to the 14th floor at the end of the fifth year of the Lease, or May 31, 2004, 'subject to compliance with' certain terms and conditions." *Id.* at 734. One of those conditions was that the tenant must "give notice of its intent to cancel 12 months before the cancellation date, i.e., May 31, 2003." *Id.* "A second condition was that [the tenant] make a lease cancellation payment 'on or before 90 days prior' to the end of the fifth year of the Lease, i.e., March 2, 2004." *Id.* The lease further provided that time was of the essence. *Id.* On May 30, 2003, the tenant timely notified the landlord of its intent to exercise the cancellation option. *Id.* However, on March 30, 2004, 28 days after the deadline established by the lease, the landlord received a letter from the tenant purporting to enclose the termination fee, which was admittedly late due to inadvertence. *Id.* The landlord returned the check and advised the tenant that because the termination fee had been tendered after the date allowed by the lease, the lease would remain in full force and effect until its expiration date. *Id.* On appeal, the landlord argued that the tenant failed to effectively exercise the cancellation option, while the tenant contended that "the late tender was sufficient under the doctrine of substantial compliance." *Id.* at 735. The Court explained:

> A lease, like any other contract, is to be construed to give full effect to the intentions of the parties. The general rule in determining contract compliance is substantial compliance, not strict compliance. [OCGA § 13-4-20]. And, although timely performance may not be of the essence of a contract, it may become so by express stipulation or reasonable construction. As our Supreme Court noted in *Sneed v. Wiggins*,
>
> > if the parties *expressly agree that time* shall be important; if they stipulate that a thing shall be done or not done, at a given time, then *time* is of the essence of the contract, and it must be observed. Courts of Equity, as well as of law, will hold the parties to their agreement; they will make for them no new contract. Even if the stipulation as to time be arbitrary, if the parties make it, it must be carried into effect; the intention must prevail.
>
> The rule with respect to option contracts or option provisions is the opposite of the general rule laid down in OCGA § 13-4-20. In such agreements, a "time is of the essence" provision is *inferred*, thus requiring strict compliance. Accordingly, a lessee seeking to exercise an option to cancel or renew a commercial lease must strictly comply with the terms of that option.

*Id.* (most footnotes containing citations omitted, one included in brackets). Applying those principles to the case before it, the Court of Appeals found that regardless of whether the cancellation provision was an option, the parties agreed that time was of the essence. *Id.* at 736. They also agreed that the tenant could exercise its right to cancel the lease if it

satisfied two conditions: (1) giving notice of its intent to cancel 12 months before the cancellation date; and (2) paying a cancellation fee "on or before 90 days prior" to the end of the fifth year. *Id.* Because the parties agreed that time was of the essence, "payment of the cancellation fee by March 2, 2004, was essential to full compliance with the terms of the cancellation provision." *Id.* The tenant tendered its timely written notice, but the cancellation fee was tendered 28 days late. *Id.* Accordingly, the tenant "failed to exercise its right to cancel the Lease." *Id.*

"Generally," in Georgia, "'the exercise of a contractual option by an offeree must be unequivocal and in accordance with the terms of the option in order to be valid.'" *Sage Atlanta Props., LTD. v. Hawxhurst*, 824 S.E.2d 387, 390 (Ga. Ct. App. 2019) (quoting *Atkinson v. Cook*, 518 S.E.2d 413 (Ga. 1999)). And, "a lessee seeking to exercise an option to cancel or renew a commercial lease must strictly comply with the terms of that option." *Piedmont Ctr.*, 649 S.E.2d at 735. *See, e.g.*, *Anthony v. Ausburn*, 330 S.E.2d 724, 724-25 (Ga. 1985) (concluding that the trial court properly granted summary judgment to a landlord where the lease gave the tenant an option to renew by written notice 60 days in advance of the expiration of the lease and the tenant mailed written notice purporting to exercise the option on the sixtieth day but it was not received until the following day); *Sage Atlanta*, 824 S.E.2d at 390 (explaining, with respect to an option to renew a lease, that the landlord "had the right to demand strict compliance with the renewal option[']s mail requirement"); *Hemmerich v. Se. Props. Grp., L.P.*, 498 S.E.2d 87, 89-90 (Ga. Ct. App. 1998) (concluding that a lease was not renewed where the tenant claimed that she left notice on the desk of the property manager but she did not have the notice mailed with return receipt or personally delivered by a carrier service or otherwise follow the lease terms regarding the extension option). Given these controlling principles under Georgia law, we conclude that Tenant did not comply with the lease's ninety-day written notice provision by sending the letter to Landlord on April 19, just over a month before the lease ended on May 31.

For the same reasons, we readily reject Tenant's alternative argument that the Fixture Fee Agreement provided sufficient notice of its intention to exercise the option. Tenant contends that the parties "clearly contemplated" that Tenant would remain in the property because the equipment payments extended 42 months into the first option period. However, the lease's option provision stated that "[t]he option shall be exercised by written notice given to Landlord" and if notice was not given "in the manner provided herein within the time specified, this option shall expire." The lease further provided that all notices required to be sent to Landlord under the terms of the lease "shall be given via personal delivery, by a nationally recognized overnight carrier, or by USPS certified mail, with return receipt requested, and sent to the following address[] . . . ." There is nothing in the record to indicate that the Fixture Fee Agreement was sent in that manner, and it does not contain any language purporting to exercise the option to renew. To the contrary, it expressly stated:

3. Nothing herein shall be construed by either party to extend the term of the Lease.

4. Except as expressly set forth in this Agreement, the Lease and any other documents related to the Premises are hereby ratified and remain in full force and effect. Each party acknowledges and agrees that no representations, inducements, promises or statements, written, oral or implied, have been made by any party or anyone acting on behalf of any party which are not embodied in the Lease or this Agreement, and each party agrees that no agreement not set forth in writing in this Agreement or the Lease is valid or binding.

Thus, the Fixture Fee Agreement did not contain an unequivocal exercise of the option, nor was sent in the manner required by the lease. Consequently, it was not an effective exercise of the option to renew the lease. The lease expired by its terms on May 31, 2022.

## C.   Attorney Fees

Landlord requests an award of attorney fees and costs incurred on appeal pursuant to the provision of the lease regarding attorney fees. It provided,

> **22. Attorney's Fees . . . .** If any rent owing under this Lease is collected by or through an attorney at law, Tenant agrees to pay reasonable attorney's fees. If suit should be brought for recovery of the Premises, or because of any act, which may arise out of the possession of the Premises, by either party, the prevailing party will be entitled to all costs incurred in connection with such action, including reasonable attorney's fees. . . .

We agree that Landlord is entitled to an award of its attorney fees and costs on appeal and direct the trial court to determine a reasonable award on remand.

## IV.   CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby affirmed and remanded. Costs of this appeal are taxed to the appellants, Sheikh Moin Ahamed, and Nexus Exxon, Inc., for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE